**Sarah GOLDSTEIN, Plaintiff–Appellant,**

v.

**HUTTON, INGRAM, YUZEK, GAINEN, CARROLL & BERTOLOTTI, Defendant–Appellee.**

**Docket No. 01–9085.**

United States Court of Appeals, Second Circuit.

Argued: June 19, 2003.

Decided: July 1, 2004.

Victor M. Serby, New York, NY, for Plaintiff–Appellant.

Laurel A. Wedinger, Barry, McTiernan & Moore, New York, N.Y. (Suzanne M. Halbardier on the brief), for Defendant–Appellee.

Before: B.D. PARKER and RAGGI, Circuit Judges, SWAIN, District Judge.*

SWAIN, District Judge.

The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), imposes, among other things, certain notice and timing requirements on efforts by "debt collectors" to recover outstanding obligations. The term "debt collector" is defined, subject to exclusions not relevant here, to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In this FDCPA action, the United States District Court for the Southern District of New York (Cedarbaum, J.) granted sum-

---

* The Honorable Laura Taylor Swain of the United States District Court for the Southern District of New York, sitting by designation.

mary judgment for the defendant law firm, finding that it was not a debt collector within the meaning of the statute. Because we find that the evidence of record was sufficient to support a finding that the defendant was a debt collector, we vacate the judgment and remand the case for further proceedings consistent with this opinion.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff-appellant Sarah Goldstein ("Goldstein") leased a Manhattan apartment from non-party Stahl York Avenue Co. ("Stahl") in 1992. Beginning in 1996, a number of disputes arose between Stahl and Goldstein concerning alleged lease violations and rent arrears. Defendant-appellee Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti ("Hutton"), a New York City law firm, represented Stahl in connection with the landlord-tenant matters. Following state court proceedings in 1997 that ended with the settlement of allegations relating to illegal subletting and alterations but did not resolve issues concerning back rent, Hutton prepared, and caused Goldstein to be served with, a "three-day notice" pursuant to the New York State Real Property Actions and Proceedings Law, demanding that all outstanding rent be paid within three days, or possession of the apartment relinquished within that period, and threatening summary dispossession proceedings in the event of noncompliance.[1] Hutton commenced a summary proceeding a week later, Goldstein filed the complaint in this FDCPA action a little more than five weeks thereafter. The summary proceeding was subsequently settled.

In her Amended Class Action Complaint, Goldstein alleges that Hutton's notice violated the requirements imposed on debt collectors by the FDCPA in that it (1) failed to include the 30-day validation notice required by 15 U.S.C. § 1692g; (2) failed, in violation of 15 U.S.C. § 1692e(11), to disclose that Hutton was attempting to collect a debt and that any information obtained would be used for that purpose; and (3) contained threats to take actions that could not legally be taken or were not intended to be taken, in violation of 15 U.S.C. § 1692e(5).[2]

Following the denial of a pre-answer motion to dismiss the complaint and two years of discovery, Hutton moved for summary judgment, arguing that its conduct, in the context of the parties' dealings, did not violate the FDCPA and that it was not a "debt collector" within the meaning of the FDCPA. The district court granted Hutton's motion on the latter ground. *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 155 F.Supp.2d 60 (S.D.N.Y.2001).

## DISCUSSION

■ We review a district court's grant of summary judgment *de novo*, construing all evidence in connection with the motion in the light most favorable to the nonmoving party. *Horvath v. Westport Library Ass'n*, 362 F.3d 147, 151 (2d Cir.2004). A grant of summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

---

1. Issuance of a three-day notice is a statutory prerequisite to the commencement of summary proceedings to recover possession of property for non-payment of rent. N.Y. Real Prop. Acts Law § 711.

2. Joint Appendix ("J.A.") A–18–25.

Fed.R.Civ.P. 56(c). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal citation and quotation marks omitted).

■ The Supreme Court has made it clear that the FDCPA applies to attorneys "regularly" engaging in debt collection activity, including such activity in the nature of litigation. *Heintz v. Jenkins*, 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). In *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 116–17 (2d Cir.1998), we held that three-day notices issued by a law firm pursuant to N.Y. Real Prop. Acts Law section 711 constitute debt-related "communications," and that a lawyer's preparation of such notices constitutes debt collection activity, within the scope of the FDCPA. We have not until now, however, had the opportunity to address what constitutes the "regular" collection of debt within the meaning of the FDCPA's definition of "debt collector."

[3] Hutton's summary judgment motion was supported by evidence that it had derived only $5,000 in revenues from the issuance of three-day notices during the one-year period immediately preceding the commencement of this action, amounting to 0.05% of its $10,000,000 revenue over that period. (J.A. A–245, A–374–80.) Plaintiff countered with evidence that Hutton had sent 145 three-day notices within that period. (J.A. A–88 to A–238.) The district court held that the factors relevant to a determination as to whether a defen-

dant "regularly" collects consumer debt include

the percentage of revenue generated by debt collection activities, the sheer volume of debt collection activities, and whether defendants have an ongoing attorney-client relationship with a collection agency. *See, e.g., White [v. Simonson & Cohen P.C.,]* 23 F.Supp.2d ... [273,] 274 (E.D.N.Y.1998); *Von Schmidt v. Kratter,* 9 F.Supp.2d 100, 102 (D.Conn.1997); *Cacace v. Lucas,* 775 F.Supp. 502, 504 (D.Conn.1990).

*Goldstein,* 155 F.Supp.2d at 64. The district court further observed that "[c]ourts have uniformly held as a matter of law that law firms for which debt collection activities constitute ... a small percentage of their revenues are not debt collectors under the FDCPA," citing a number of decisions from outside this Circuit. *Id.* Based on the low percentage of Hutton's revenues derived from the three-day notices, the fact that Hutton did not advertise itself as being in the business of debt collection or as maintaining a specialty in debt collection, the lack of evidence that Hutton represented traditional debt collection agencies, and its view that Hutton's volume of debt collection activity was "significantly less" than that at issue in the two cases principally relied upon by Goldstein, the district court concluded that Hutton was not a debt collector within the meaning of the FDCPA. *Id.* at 65. As explained below, we believe that the decision below should have focused on the regularity of Hutton's debt collection activity rather than principally on the proportion its business devoted to debt collection

■ The plaintiff in an FDCPA action bears the burden of proving the defendant's debt collector status. Goldstein was thus required, in responding to Hutton's summary judgment motion, to make a showing sufficient to support a determina-

tion that Hutton was a debt collector at the time it issued the challenged communication. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Goldstein proffered undisputed evidence that Hutton had issued 149 three-day notices between December 1996 and February 1998, including 145 such notices sent between February 27, 1997 and February 27, 1998. Goldstein also challenged the admissibility of Hutton's evidence concerning its revenues.

The FDCPA establishes two alternative predicates for "debt collector" status—engaging in such activity as the "principal purpose" of the entity's business and "regularly" engaging in such activity. 15 U.S.C. § 1692a(6). There is no contention here that debt collection was a principal purpose of Hutton's business. Rather, as the district court recognized, the issue is whether Hutton regularly engaged in such activity.

In analyzing the question of whether Hutton engaged regularly in debt collection work, the district court focused primarily on the percentage of its resources devoted to, and revenues derived from, such work, as well as whether the firm marketed itself as a debt collector or had a regular client relationship with a debt collecting business. These factors, while not irrelevant to a regularity inquiry (clearly, an entity devoting a substantial part of its resources, or deriving substantial revenues from, debt collecting, or actively soliciting such business, would likely perform such work with a degree of regularity), are more pertinent to the first prong of the statutory debt collector definition—debt collection as principal business—than to the question of whether the entity engages regularly in debt collection. As the Fifth Circuit has explained,

a person may regularly render debt collection services, even if these services are not a principal purpose of his business. Indeed, if the volume of a person's debt collection services is great enough, it is irrelevant that these services only amount to a small fraction of his total business activity; the person still renders them 'regularly.'

*Garrett v. Derbes,* 110 F.3d 317, 318 (5th Cir.1997) (citation omitted). Focusing a regularity inquiry primarily on the proportion of overall work or firm revenue, a factor easily affected by the size and service pricing determinations of the law practice, blurs the distinction between the "principal purpose" and "regularity" aspects of the statutory definition of debt collector.

To the extent that some courts confronted with the task of articulating an analytical framework for the regularity prong of the definition have suggested that such proportionality factors may alone be determinative, the facts of the particular cases often belie the implication. Where debt collector status was found lacking based on revenue or workload figures, other indicia of regularity often were also lacking; where debt collector status was found, the regularity and/or principal purpose criteria would in some cases easily have been met in any event. *Compare Schroyer v. Frankel,* 197 F.3d 1170, 1173, 1177 (6th Cir.1999) (where firm handled 50–75 collection cases annually, constituting less than 2% of overall practice, maintained no non-attorney staff or computer aids for debt collection, and debt collection activity came from non-collection business clients and was "incidental to, and not relied upon or anticipated in," firm's practice of law, firm was not debt collector); *White,* 23 F.Supp.2d at 278 (lawyer who sent 35 collection letters once as favor to personal client and filed no follow-up litigation was not debt collector); *Von Schmidt v. Kratter,* 9 F.Supp.2d 100, 103–04 (D.Conn.1997)

(law firm whose total three-year revenues from debt collection were less than $1,000 and had only one consumer credit client was not debt collector); *and Nance v. Petty, Livingston, Dawson, & Devening*, 881 F.Supp. 223, 225 (W.D.Va.1994) (collection work that constituted .61% of lawyer's personal practice and represented 1.07% of firm's cases over 18–month period did not render defendant law firm debt collector, where plaintiff provided no evidence of debt collection activity other than that complained of in action); *with Scott v. Jones*, 964 F.2d 314, 316–18 (4th Cir.1992) (principal purpose and regularity prongs satisfied where lawyer and firm had regular ongoing relationship with delinquent debt division of credit card issuer, 70–80% of revenues were generated by such work over relevant period and over 4,000 "warrants" had been issued annually in connection with such work over five-year period). *See also Garrett*, 110 F.3d at 317 (rejecting district court finding that collection activity was not "regular" where 639 demand letters were mailed in nine-month period, although revenues from activity were less than 0.5% of firm's total for period). In light of Goldstein's proffer of specific evidence of debt collection activity in the form of 145 three-day notices issued in a one-year period, the district court's analysis was too narrow to support its determination that Hutton had not regularly engaged in debt collection.

Goldstein urges a different focus entirely. Citing the Third Circuit's quotation, in *Crossley v. Lieberman*, 868 F.2d 566 (3d Cir.1989), of a law journal article positing that " 'any attorney who engages in collection activities more than a handful of times per year must comply with the FDCPA,' " [3] Goldstein argues that issuance of more than five notices should alone be conclusive of debt collector status. This proposition we reject, as Goldstein's "handful" standard has no precedential basis and, standing alone, lacks a meaningful nexus to the issue of regularity. Indeed, in *Crossley* itself, the defendant lawyer had admitted that debt collection was a principal part of his business during the relevant period; the Third Circuit held that his statement "established" the "regularity of [his] debt collection activity." *Id.* at 569–70. Court records introduced by the plaintiff in that case further showed that the lawyer had engaged in a significant volume of collection litigation, including 175 "mortgage foreclosures and other collection suits for financial institutions" in an 18–month period, and had represented at least four creditors as clients. *Id.* at 570 n. 2.

■ We hold that the question of whether a lawyer or law firm "regularly" engages in debt collection activity within the meaning of section 1692a(6) of the FDCPA must be assessed on a case-by-case basis in light of factors bearing on the issue of regularity. None of the following factors is alone dispositive of the issue; they are illustrative rather than exclusive.

■■ Most important in the analysis is the assessment of facts closely relating to ordinary concepts of regularity, including (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the entity has personnel specifically assigned to work on debt collection activity,

---

**3.** *Id.* at 569 (quoting R. Hobbs, *Attorneys Must Now Comply with Fair Debt Collection Law*, X Pa.J.L.Rptr., No. 46, 3 (Nov. 21, 1987)).

(4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations.[4] Facts relating to the role debt collection work plays in the practice as a whole should also be considered to the extent they bear on the question of regularity of debt collection activity (debt collection constituting 1% of the overall work or revenues of a very large entity may, for instance, suggest regularity, whereas such work constituting 1% of an individual lawyer's practice might not). Whether the law practice seeks debt collection business by marketing itself as having debt collection expertise may also be an indicator of the regularity of collection as a part of the practice.

 The record below included evidence that Hutton had issued 145 three-day notices within a 12–month period. The collection of notices before the court indicates that notices were issued in each month of that period, more than 10 notices were issued in each of at least 7 calendar months of that period, and more than 15 notices were issued in 3 calendar months of that period.[5] The large number of notices, taken together with the repetitive pattern of issuance of multiple notices each month, clearly could support a determination that Hutton's debt collection practices were regular. Furthermore, more than 140 of the notices in the record were issued on behalf of entities whose names included the word "Stahl." [6] Hutton's ongoing relationship with apparently affiliated entities for which it repeatedly sent collection notices within the one-year period under scrutiny further indicates regularity of collection work as part of the firm's business.

There was also evidence before the district court that Hutton had a system in place for preparing and issuing the notices: it relayed tenant arrears information to an outside computer service which generated the notices, assigned a paralegal to review them for consistency with the information provided by the landlord's managing agent, and sent the notices to a process server for delivery to the tenant. (*Id.*, A–266–67, A–379–80.) The firm's name was shown on the notice and on the mailing envelope "to provide a contact person for the recipients of the notices if the recipients had questions or wished to pay their rent." (*Id.*, A–380.)

A rational factfinder could easily conclude from this evidence, when viewed in the light most favorable to Goldstein, that Hutton was a debt collector within the meaning of the FDCPA at the relevant time. Accordingly, Hutton's summary judgment motion should have been denied insofar as it was predicated on the issue of debt collector status.

---

4. Client relationships that may be relevant in this connection are not limited to ones with traditional debt collection businesses; the case law and common sense suggest that lenders or other creditors, landlords or other lessors, and service providers are among the types of businesses that may regularly engage legal assistance in consumer debt collection. *See, e.g., Romea,* 163 F.3d at 115–16 (back rent is debt within meaning of FDCPA); *Garrett,* 110 F.3d at 317 (delinquent telephone bill collection work for Bell South Mobility); *Von*

*Schmidt,* 9 F.Supp.2d at 101–03 (apparent attempt to establish debt collection business with rehabilitation center client); *Stojanovski v. Strobl & Manoogian, P.C.,* 783 F.Supp. 319, 321 (E.D.Mich.1992) (representation of Chrysler Credit Corporation in litigation for delinquent accounts).

5. J.A. A–88–238.

6. *Id.*

We have reviewed the parties' remaining contentions and find them to be without merit.

## CONCLUSION

Weighed in light of the standard announced today and when viewed in the light most favorable to Goldstein, the evidence before the district court was sufficient to support a finding that Hutton was a debt collector within the meaning of the FDCPA. The judgment entered by the district court is, accordingly, vacated, and the matter is remanded for further proceedings consistent with this opinion.