# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 4, 2008

Charles R. Fulbruge III
Clerk

No. 07-40176

CARLA HESTER

Plaintiff-Appellee

V.

GRAHAM, BRIGHT & SMITH, P.C. AND R. SPENCER SHYTLES

Defendants-Appellants

Appeal from the United States District Court
for the Eastern District of Texas
(6:04-CV-36)

Before GARWOOD, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

Defendants-Appellants, Graham, Bright & Smith, P.C. (GBS) and R. Spencer Shytles, appeal the order of the district court awarding statutory damages and attorneys' fees to plaintiff-appellee, Carla Hester, for a violation of the venue requirement of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692i(a)(2). For the following reasons, we affirm the judgment of the district court, but modify and remand as to attorney's fees.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## FACTS AND PROCEEDINGS BELOW

This case arises out of a debt that Hester owed to Aqua Finance, Inc. (Aqua Finance) for the installation of siding on her and her former husband's house in Fort Worth, Texas.[1]  On February 7, 2003, Shytles, as an officer and shareholder of GBS, filed suit against Hester to collect this debt on behalf of Aqua Finance in the Dallas County Court at Law.  The court granted summary judgment for Aqua Finance, and awarded the company a judgment against Hester for $9,510.98 in damages, attorneys' fees, interest, and court costs.

After the state court entered this judgment against her, Hester filed the present suit against Shytles, GBS, and Aqua Finance in federal court on January 28, 2004.[2]  She alleged that GBS and Shytles engaged in "distant forum abuse" in violation of the FDCPA by filing suit against her on behalf of Aqua Finance in an improper venue.  Under the FDCPA,  unless a debt collector is suing to enforce an interest in real property, it must bring any action on a debt against a consumer in the judicial district where the consumer signed the contract at issue or in the judicial district where the consumer resided when the suit was filed.  15 U.S.C. § 1692i(a)(2).  Hester entered the retail installment contract with Aqua Finance in Tarrant County, Texas, and lived in Smith County, Texas when the suit was filed.  Therefore, Hester argues that the defendants sued her in an improper judicial district when they sued her in Dallas County, Texas.

---

[1] A different company, All American Builders, Inc., actually installed the siding on Hester's house, but Aqua Finance purchased this contract from All American Builders, Inc. and had the right to enforce it.

[2] Hester alleged that Aqua Finance was liable for distant forum abuse under the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. § 17.46(b)(23) (Vernon Supp. 2007), for filing suit against her in an improper county.  However, the district court dismissed Hester's claims against Aqua Finance, so Aqua Finance is not a party to this appeal. Therefore, we will not discuss Hester's claim against Aqua Finance.

On May 20, 2004, Shytles and GBS filed an answer to Hester's pleadings in which they denied that they violated the FDCPA in any event, and claimed that they were not governed by the FDCPA because they were not debt collectors for the purposes of that act. On March 11, 2005, Hester filed a Motion for Partial Summary Judgment on liability, to which the defendants did not respond. On April 1, 2005, Magistrate Judge Judith K. Guthrie issued a report and recommendation suggesting that the motion be granted. Although the defendants objected, the district court adopted the report and granted Hester's Motion for Partial Summary Judgment on April 22, 2005. It found that Shytles and GBS were debt collectors under the FDCPA, and that they were liable to Hester for violating the FDCPA because they filed suit against her in an improper judicial district. The matter was set for trial as to damages.

On the day of the trial, May 23, 2005, the district judge informed the parties that he could not try the case due to scheduling conflicts, and requested that the parties try the case in front of Magistrate Judge Harry W. McKee (Magistrate McKee) instead. The parties agreed to this arrangement by executing a "Consent to Proceed Before United States Magistrate Judge" (the Consent to Proceed), which states:

> "In accordance with the provisions of 28 U.S.C. Section 636(c), you are hereby notified that a United States Magistrate Judge of this district court is available to conduct any or all proceedings in this case including a jury or non-jury trial, and to order the entry of a final judgment. Exercise of this jurisdiction by a magistrate judge is, however, permitted only if all parties voluntarily consent. You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's trial jurisdiction from being exercised by a magistrate judge . . . .
> In accordance with the provisions of 28 U.S.C. 636(c), the parties in this case hereby voluntarily consent to have a United States Magistrate Judge conduct any and all further proceedings in the case, including trial, order the entry of a final judgment, and conduct all post-judgment proceedings."

Attorneys for both Hester and the defendants signed the Consent to Proceed. The district court judge then signed an Order of Reference transferring the case to Magistrate McKee. This order stated that the case would "be referred to Harry W. McKee, United States Magistrate Judge, for all further proceedings and the entry of a judgment in accordance with 28 U.S.C. Section 636(c), and the foregoing consent of the parties." Thereafter, Magistrate McKee conducted the trial. After trial, Magistrate McKee ruled on post-trial motions, but did not enter final judgment in the case.

On January 1, 2006, Magistrate McKee retired, and his Tyler civil and criminal cases and motions were transferred to Magistrate Judge John D. Love (Magistrate Love). On January 17, 2006, the district court judge signed an Order of Reference referring this case to Magistrate Love "for all further proceedings and entry of judgment in accordance with Title 28, U.S.C. 636(c) and the consent of the parties." This order was entered on the docket on January 19, 2006. Magistrate Love entered an order against GBS and Shytles on March 31, 2006. He awarded $1,000 to Hester, and attorneys' fees to her counsel: $31,800 to Richard Tomlinson in attorneys' fees and travel and $1,109.14 for other costs, and $1,290 to Craig Jordan for attorneys' fees and travel.

In a Motion for Rehearing or for New Trial on April 10, 2006, the defendants challenged the amount of attorneys' fees awarded, complained about the absence of a ruling on their constitutional challenge to the definition of "debt collector" under the FDCPA, and objected to the Order of Reference to Magistrate Love. Their motion was denied in an order issued on September 11, 2006. Then, on January 11, 2007, Magistrate Love signed a separate document explicitly denominated as the "Final Judgment" in the case. The Final Judgment reiterated the awards of statutory damages and attorneys' fees for Hester and her counsel that were outlined in the March 31, 2006 order, except that it awarded Tomlinson $4,109.14 for costs instead of $1,109.14. On January

19, 2007, Shytles and GBS filed a Motion to Set Aside "Final Judgment" and Motion for New Trial, which Magistrate Love denied in an order signed on January 22, 2007. Shytles and GBS now appeal.[3]

## DISCUSSION

We limit our discussion to issues presented on appeal: whether Magistrate Love had jurisdiction to enter final judgment in this case; whether GBS and Shytles are debt collectors for FDCPA purposes; whether the definition of "debt collector" under the FDCPA is unconstitutionally vague; and whether the district court should have awarded attorneys' fees to Hester instead of to her counsel. For the reasons stated below, we affirm the judgment of the district court in part, vacate the district court's award of attorneys' fees and costs directly to Hester's counsel, and remand the issue of attorneys' fees to the district court for further proceedings not inconsistent with this opinion.

A.    Jurisdiction of Magistrate Love

GBS and Shytles argue that Magistrate Love lacked jurisdiction to order and sign the final judgment in this case. The Constitution requires consent of all parties for a magistrate judge (MJ) to preside in a case in place of an Article III judge . See Carter v. Sea Land Services, Inc., 816 F.2d 1018, 1021 (5th Cir. 1987) ("[C]onsent to trial before a magistrate waives the right to trial before an article III judge."). However, the defendants argue that the parties did not consent to the referral of this case to Magistrate Love. Consent to trial or entry of a judgment by a MJ is a jurisdictional issue that this court reviews de novo.

---

[3] On February 19, 2007, GBS, Shytles, and Aqua Finance filed a notice of appeal. However, Aqua Finance received a favorable judgment in the underlying case and was not listed as a party on the brief of GBS and Shytles. Furthermore, at oral argument, defendants admitted that they mistakenly included Aqua Finance in the notice of appeal. At the direction of this court, Aqua Finance filed a motion to dismiss its notice of appeal on March 19, 2008, which this court granted on March 26, 2008. Thus, Aqua Finance is not a party to this appeal.

Withrow v. Roell, 288 F.3d 199, 202 (5th Cir. 2002), rev'd on other grounds, 123 S. Ct. 1696 (2003).

"Upon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves." 28 U.S.C. § 636(c)(1). Thus, a MJ does not have jurisdiction to enter a judgment unless the parties have consented to the referral and the district judge has designated a particular MJ. Mendes Junior Int'l Co. v. M/V Sokai Maru, 978 F.2d 920, 924 (5th Cir. 1992). Federal Rule of Civil Procedure 73(b)(1) indicates that the parties may consent to have a MJ preside in their case in a joint form of consent. Both Shytles and counsel for Hester signed such a form, the Consent to Proceed, on May 23, 2005, and the district court issued the Order of Reference referring Magistrate McKee to the case the same day. Later, on January 17, 2006, the district court issued an Order of Reference transferring the case to Magistrate Love, but the parties did not sign a new consent form at that time.

The plain language of the Consent to Proceed indicates that the parties consented to have any MJ, not only Magistrate McKee, preside in their case. The Consent to Proceed states that "the parties in this case hereby voluntarily consent to have a United States Magistrate Judge conduct any and all further proceedings in the case, including trial, order the entry of a final judgment, and conduct all post-judgment proceedings." It does not specify that the parties only consent to have a specific MJ preside, nor does it indicate that Magistrate McKee will preside. Thus, GBS and Shytles consented to having any MJ preside in their case, including Magistrate Love.

Shytles and GBS cite Mendes for the proposition that consent to having one MJ preside in a case is not consent to having any other MJ preside as well. 978 F.2d 920. In Mendes, this court addressed a document entitled "Consent to

6

Proceed Before United States Magistrate Karen K. Brown-Civil Case," which explicitly provided consent by the parties to allow Magistrate Judge Karen K. Brown (Magistrate Brown) to conduct proceedings in the case, including issuing the entry of judgment. Id. at 921. Before Magistrate Brown entered judgment, however, she became a bankruptcy judge, so the district court transferred the case to Magistrate Frances H. Stacy (Magistrate Stacy). Id. at 922. However, it did not obtain specific consent from the parties to proceed before Magistrate Stacy or issue an Order of Reference transferring the case to Magistrate Stacy. Id. This court held that because there was no Order of Reference to Magistrate Stacy, and because the only written consent and Order of Reference expressly listed Magistrate Brown, Magistrate Stacy lacked authority to enter judgment in the case. Id. at 924.

Although the instant case is similar to Mendes in that the district court transferred the case to a new MJ while it was pending, it is distinguishable in two essential ways. Most importantly, unlike in Mendes, in this case, the Consent to Proceed did not specify that the consent was only as to a particular MJ. Instead, the parties agreed to have the case tried by "a United States Magistrate Judge." Furthermore, unlike in Mendes, the district court in this case issued an Order of Reference assigning the case to the second MJ, Magistrate Love. Thus, Mendes is distinguishable, and does not indicate that Magistrate Love lacked jurisdiction to enter a final judgment in this case.

Furthermore, GBS and Shytles did not object to the Order of Reference transferring the case to Magistrate Love until after he awarded statutory damages and attorneys' fees to Hester. The district court entered the Order of Reference referring Magistrate Love to this case on January 17, 2006. This order was entered into the docket two days later, on January 19, 2006. Thereafter, on March 31, 2006, Magistrate Love entered the order awarding Hester attorneys' fees and statutory damages. It was not until April 10, 2006,

almost three months from the date that the district court referred Magistrate Love to the case, and over a week after Magistrate Love entered an order unfavorable to the defendants, that they objected to this Order of Reference. Furthermore, there is no evidence that the defendants did not realize that the district court referred Magistrate Love to their case in January of 2006 so that they did not have time to object to his referral before Magistrate Love issued his March 31, 2006 order. The fact that the defendants objected to having Magistrate Love conduct proceedings in their case only after he issued an order against them further suggests that the defendants' argument regarding the referral of their case to Magistrate Love is without merit. Allowing parties to object to a MJ and insist upon a new trial only when he issues an order unfavorable to them would allow a "gamesmanship" of the system that the Supreme Court has sought to avoid.[4] See Roell v. Withrow, 123 S. Ct. 1696, 1703 (2003) (indicating that inferring a party's consent to having a MJ preside in its case "checks the risk of gamesmanship by depriving parties of the luxury of waiting for the outcome before denying the magistrate judge's authority").

We conclude that Magistrate Love had jurisdiction to issue a final judgment because the defendants signed the Consent to Proceed in which they consented to have any MJ conduct proceedings in this case.

B.     Whether GBS and Shytles are debt collectors

Shytles and GBS next argue that the district court erred in finding that they qualify as debt collectors under the FDCPA. Because the venue requirements of the FDCPA found at 15 U.S.C. § 1692i only apply to debt

---

[4] Hester argues that GBS and Shytles impliedly consented to the referral of this case to Magistrate Love by failing to object to the referral until after he issued an order unfavorable to them. The Supreme Court recently held that consent under 28 U.S.C. § 636(c) can be inferred from a party's conduct. Roell v. Withrow, 123 S. Ct. 1696, 1699 (2003). However, as we hold that the defendants consented to have any MJ conduct proceedings in their case by signing the Consent to Proceed, it is not necessary to address Hester's implied consent argument.

collectors, the defendants must be considered debt collectors in order to be held liable for violating this statute. Under 15 U.S.C. § 1692a(6), a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." The statute contains two categories of debt collector, those who collect debts as their "principal purpose," and those who do so "regularly." Hester does not argue that the principal purpose of the defendants' business is debt collection, so the issue in this case is whether the defendants "regularly collect[ed] or attempt[ed] to collect" debts. Because the defendants' status as debt collectors was determined through summary judgment, we review this finding de novo. Anaya v. Traylor Brothers, Inc., 478 F.3d 251, 253 (5th Cir.), cert. denied, 128 S.Ct. 68 (2007).

Attorneys qualify as debt collectors for purposes of the FDCPA when they regularly engage in consumer debt collection, such as litigation on behalf of a creditor client. Heintz v. Jenkins, 115 S. Ct. 1489, 1493 (1995). A person may "regularly" collect debts even if debt collection is not the principal purpose of his business. Garrett v. Derbes, 110 F.3d 317, 318 (5th Cir. 1997). "[I]f the volume of a person's debt collection services is great enough, it is irrelevant that these services only amount to a small fraction of his total business activity . . . ." Id. "Whether a party 'regularly' attempts to collect debts is determined, of course, by the volume or frequency of its debt-collection activities." Brown v. Morris, 243 Fed. App'x. 31, 35 (5th Cir. 2007); see also Garrett, 110 F.3d at 318. However, no bright-line rule identifies when an attorney or law firm "regularly" collects or attempts to collect debts, so courts must make this determination on a case-by-case basis. Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d 56, 62 (2d Cir. 2004).

Both GBS and Shytles qualify as debt collectors under the FDCPA. GBS is a law firm consisting of eight attorneys and five or six support staff. Shytles has practiced as an attorney for GBS since 1983, and he serves as vice president of this professional corporation. In the two years before this suit was filed, from January 28, 2002 until January 28, 2004, GBS and Shytles attempted to collect debts on 450 occasions for four clients. They filed 133 lawsuits and mailed twenty-nine demand letters for America Honda Finance Corporation; filed forty-six lawsuits and mailed 239 demand letters on behalf of Aqua Finance; filed two lawsuits for The Oaks Bank & Trust Company; and filed one lawsuit for CU Recovery, Inc. Shytles spent approximately twenty-five percent of his time on consumer debt collection during this time, and the 182 debt collection lawsuits filed by GBS represented between one-third and one-half of the lawsuits he filed. GBS assigned an attorney and a secretary to this debt collection work. Even more, GBS represented two of its four creditor clients over a period of at least five years. Finally, all of the debts that GBS and Shytles attempted to collect for their clients are considered consumer debts for FDCPA purposes, and are governed by the Act. 15 U.S.C. § 1692a(5).

These facts clearly indicate that both GBS and Shytles participated in enough debt-collection activities to be "regular" debt collectors under the FDCPA.[5] See, e.g., Goldstein, 374 F.3d at 63 (holding that a volume of 145

---

[5] The defendants argue that it was error to award Hester recovery against GBS because there was no evidence that Shytles' acts were the acts of GBS. As it is clear that Shytles was a lawyer for GBS at the time he brought suit against Hester, there was sufficient uncontradicted evidence for summary judgment purposes for the district court to hold that Shytles acted on behalf of GBS when he filed suit against Hester in an improper venue. When Shytles filed the lawsuit against Hester in an improper court in violation of 15 U.S.C. § 1692i, he did so in his capacity as an officer and shareholder of GBS. As a professional corporation, GBS can only act through its agents, or officers. See 3 AM. JUR. 2D Agency § 262 (2008) (a principal is generally bound by the acts of an agent acting within the scope of his authority); Tex. Bus. Orgs. Code Ann. § 301.010(a) (Vernon Supp. 2007) (a professional corporation "is jointly and severally liable for an error, omission, negligent or incompetent act, or malfeasance committed by a person who . . . is an owner, managerial official, employee, or agent of the entity; and . . . while providing a professional service for the entity or during the course of the

collection letters within a year combined with the regular dispersal of the letters over the course of the year was enough to establish that a law firm was a debt collector); Garrett, 110 F.3d at 318 (holding that an attorney who in a nine month period attempted to collect debts owed to a client from 639 individuals "regularly" collected debts for FDCPA purposes); Crossley v. Lieberman, 868 F.2d 566, 570 (3rd Cir. 1989) (holding that an attorney who principally worked on debt collection matters in the pertinent time period and filed 175 foreclosures and other actions for four clients over eighteen months was a debt collector under the "regularly collecting" prong). The district court did not err in determining, based on the undisputed summary judgment evidence, that GBS and Shytles are debt collectors for FDCPA purposes.

C.   Whether the definition of "debt collector" in the FDCPA is unconstitutionally vague

GBS and Shytles also argue that the FDCPA's definition of "debt collector" as someone who "regularly collects or attempts to collect" debts owed to a third person, 15 U.S.C. § 1692a(6), is unconstitutionally vague in violation of the Due Process Clause. They suggest that opinions discussing when someone is a debt collector demonstrate that it is not clear what a debt collector is and how a person can determine whether his activities are governed by the FDCPA. The challenge of this statute as void for vagueness should be reviewed de novo. Women's Med. Ctr. of Nw. Houston v. Bell, 248 F.3d 411, 419 (5th Cir. 2001).

Case law distinguishes between the situations in which criminal and economic statutes should be considered unconstitutionally vague in violation of due process. In Grayned v. City of Rockford, 92 S. Ct. 2294, 2298-99 (1972), the

---

person's employment, commits the error, omission, negligent or incompetent act, or malfeasance."). There is no evidence that Shytles was acting of his own accord, outside his obligations for the law firm for which he worked when he filed the suit. Therefore, his actions were the actions of GBS, and GBS as well as Shytles both qualified as debt collectors under the FDCPA, and violated the FDCPA by filing suit against Hester in an improper county.

11

Supreme Court described the situations in which criminal statutes should be considered unconstitutionally vague. First, a criminal law should "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Id. Second, a criminal law must "provide explicit standards for those who apply them" in order to avoid arbitrary and discriminatory enforcement. Id. at 2299. However, economic regulations like the FDCPA regulation at issue in this case, which GBS and Shytles do not claim implicates constitutionally protected conduct, are "subject to a less strict vagueness test because [their] subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 102 S. Ct. 1186, 1193 (1982). This is also because the consequences of a violation of a civil statute are much less severe. Id. "An economic regulation is invalidated only if it commands compliance in terms so vague and indefinite as really to be no rule or standard at all . . . or if it is substantially incomprehensible." Ford Motor Co. v. Tex. Dep't of Transp., 264 F.3d 493, 507 (5th Cir. 2001) (internal quotations and citations omitted). See also Roark & Hardee LP v. City of Austin, 522 F.3d 533, 546-47, 551-52 (5th Cir. 2008).

The FDCPA's definition of "debt collector" is not unconstitutionally vague. First, the definition gives "the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Grayned, 92 S. Ct. at 2298. Although there is no bright-line test set forth in the statute, the plain language of the statute provides sufficient information for most parties to determine with relative certainty whether they will be considered debt collectors. A person should know if there is a chance that he "regularly collects or attempts to collect" debts, 15 U.S.C. § 1692a(6). The term "regularly" is generally understood to mean "at fixed and certain intervals,

12

regular in point of time," or "[i]n accordance with some consistent or periodical rule or practice." BLACK'S LAW DICTIONARY 1286 (6th ed. 1990). Thus, any person engaging in frequent debt collection activities should be aware that he may be considered a debt collector. There is undoubtedly some gray area in determining what entities qualify, especially when, like GBS and Shytles, they also engage in non-debt-collection activities, but this does not mean that parties are not given a "reasonable opportunity" to determine their status. Grayned, 92 S. Ct. at 2298. Furthermore, courts do not seem to have varied significantly in determining what parties are "regular" debt collectors, so there has not been arbitrary or discriminatory enforcement of the statute. See id.

A party considered a debt collector is not for that reason subject to potential criminal liabilities. Instead, it is subject to the purely economic regulations of the FDCPA. A party that potentially could be subject to the FDCPA can plan carefully, based on the plain language of the statute as well as pertinent case law. See Flipside, 102 S. Ct. at 1193. It can avoid being categorized as a debt collector by limiting its debt collection activities. Thus, there is very little need to hold 15 U.S.C. § 1692a(6) void for vagueness to avoid the risk that businesses face unpredictable consequences as a result of their activities. Flipside, 102 S. Ct. at 1193. Furthermore, this economic regulation is not so vague that it is really "no rule or standard at all," and it is not by any means "substantially incomprehensible." Ford Motor Co., 264 F.3d at 507 (citation and internal quotation marks omitted). Finally, we could not find, and the defendants do not cite, any case involving a challenge to the definition of "debt collector" as unconstitutionally vague or incomprehensible. In light of the hundreds of cases that have cited and interpreted this definition since its enactment in its current form in 1986, this demonstrates that neither courts nor parties have questioned the constitutional clarity of the statute, and that it has

been successfully applied in many cases.[6] Therefore, we hold that the district court did not err in finding that the definition of "debt collector" in 15 U.S.C. § 1692a(6) is not unconstitutionally vague.

D. Attorneys' fees

GBS and Shytles claim, and Hester concedes, that the district court erred in awarding attorneys' fees directly to Hester's counsel instead of to Hester. Because the issue of which party is entitled to attorneys' fees is a legal issue, this court reviews this award of attorneys' fees de novo. Women's Med. Ctr. of Nw. Houston, 248 F.3d at 419. The FDCPA provides that the person who recovers damages for a statutory violation, not that person's attorney, should recover a reasonable attorney's fee.[7] 15 U.S.C. § 1692k(a)(3); see also Shula v. Lawent, 359 F.3d 489, 492 (7th Cir. 2004) (holding that under the FDCPA, attorneys' fees should be awarded to the client instead of the attorney "especially since it is standard for fee-shifting statutes to award attorneys' fees as part of the costs normally awarded a prevailing party"). Accordingly, we vacate the award of attorneys' fees to Richard Tomlinson and Craig Jordan, and remand this issue to the district court to award attorneys' fees directly to Hester. Furthermore, as she has requested them in her brief, the district court should also award Hester attorneys' fees respecting services on this appeal and on remand. See 15 U.S.C. § 1692k(a)(3) (indicating that the attorneys' fees should be awarded for "any successful action to enforce" liability under the FDCPA); Pope v. Man-Data, Inc.,

---

[6] According to Westlaw, 858 cases have cited 15 U.S.C. § 1692a(6) as of April 23, 2008.

[7] In pertinent part, 15 U.S.C. § 1692k(a) states:
"[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of . . . (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."

209 F.3d 1161, 1164 (9th Cir. 2000) (holding that the prevailing party asserting an FDCPA claim was entitled to an award of attorneys' fees on appeal).

CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court in all respects except that we vacate the district court's award of attorneys' fees directly to Hester's counsel, and remand to the district court to award those attorneys' fees directly to Hester and to also fix and award to Hester attorneys' fees for this appeal and remand.

AFFIRMED in part, VACATED in part and REMANDED.