FILED
United States Court of Appeals
Tenth Circuit

July 31, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

GEORGE JAMES,

        Plaintiff-Appellant,

v.

No. 12-8076

CHERYL WADAS; WADAS LAW
OFFICE,

        Defendants-Appellees,

and

ABBY SHADAKOFSKY,
d/b/a Personal Collection Service,

        Defendant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 2:11-CV-00368-ABJ)**

Submitted on the briefs:[*]

George James, Pro Se.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Lindsay A. Woznick, Hirst Applegate, LLP, Cheyenne, Wyoming, for Defendants-Appellees.

Before **BRISCOE**, Chief Judge, **McKAY** and **O'BRIEN**, Circuit Judges.

**McKAY**, Circuit Judge.

George James filed this action against Cheryl Wadas and Wadas Law Office (collectively "Wadas") and Abby Shadakofsky, d/b/a Personal Collection Service ("Shadakofsky"), asserting violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p. James appeals from the district court's order granting summary judgment in favor of Wadas on the basis that she is not a "debt collector" within the meaning of the FDCPA. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.     Background

This FDCPA action results from proceedings that occurred in a debt collection action filed by Shadakofsky against James in Wyoming state court in August 2011. In the state court action, James filed counterclaims, asserting violations of the FDCPA and a claim of emotional distress. Shadakofsky failed to timely respond to James's counterclaims, however, and the state court entered a default judgment against her in October 2011. Shadakofsky subsequently retained Wadas, a licensed attorney operating a solo practice since 1994 with whom Shadakofsky had a previous retainer agreement to represent her on an as-needed basis. Without knowing that a

default judgment had been entered against Shadakofsky, Wadas filed an untimely answer/reply to James's counterclaims and served him with amended initial disclosures. In those disclosures, Wadas represented that legal fees were estimated to be $3,000. Wadas later represented, in an untimely response to James's discovery requests, that the legal fees were estimated in error.

It appears that in light of these procedural irregularities that occurred after default judgment had been entered, James did not avail himself of redress in the state court action but instead filed the instant FDCPA action pro se in federal district court in January 2012. James asserted that Wadas, and Shadakofsky vicariously as Wadas's principal, violated the FDCPA by committing the following acts in the state court action: 1) representing that legal fees were $3,000 when the underlying debt did not provide for the recovery of legal fees; 2) serving and filing an untimely answer/reply to the counterclaims; and 3) serving discovery requests in relation to the counterclaims. James claimed these acts violated 15 U.S.C. §§ 1692d, 1692e, and 1692f.

Wadas moved for summary judgment under Fed. R. Civ. P. 56, claiming that she was not a "debt collector" within the meaning of the FDCPA. After a hearing on the matter, the district court agreed, granting summary judgment in favor of Wadas. Shadakofsky subsequently moved to dismiss the vicarious liability claim against her under Fed. R. Civ. P. 12(b)(6) on the basis that she, as a principal, could not be held liable if her agent, Wadas, was not held liable for the alleged FDCPA violations. The

district court again agreed and granted the motion. It entered final judgment on all claims in October 2012. This appeal followed.

James appeals only the district court's grant of summary judgment.[1] At issue in this appeal is the district court's interpretation of the term "debt collector" under the FDCPA, and its conclusion that Wadas is not a "debt collector" because she does not engage in debt collection "regularly." We review the district court's grant of summary judgment de novo, applying the same legal standards as the district court. *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011). A "grant of summary judgment must be affirmed if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted). "[W]e consider the evidence in the light most favorable to the non-moving party," but "unsupported conclusory allegations do not create a genuine issue of fact." *Id.* (alterations, internal citations and quotation marks omitted). Because James is pro se, we liberally construe his filings, but we will not act as his advocate. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

---

[1] James initially also appealed from the district court's order granting Shadakofsky's motion to dismiss. On December 28, 2012, James and Shadakofsky subsequently filed a stipulated motion to dismiss with prejudice the appealed claims between them. This Court granted the motion. Accordingly, Shadakofsky is not a party to this appeal. Although James raised the dismissal of his vicarious liability claim against Shadakofsky as a claim of error in his Opening Brief, filed December 10, 2012, we will not address this issue based on James's and Shadakofsky's stipulated dismissal of appellate claims.

## II. Discussion

### A. FDCPA

Congress enacted the FDCPA in 1977 with the express purpose to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The Act regulates interactions between consumer debtors and "debt collectors." To achieve this end, the FDCPA imposes three broad prohibitions. *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002). First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id*. § 1692e. And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." *Id*. § 1692f. "Violation of these standards subjects debt collectors to civil liability . . . or administrative enforcement by the Federal Trade Commission." *Johnson*, 305 F.3d at 1117; *see also* 15 U.S.C. §§ 1692k, 1692l. Accordingly, a defendant can be held liable for violating the FDCPA only if she is a "debt collector" within the meaning of the FDCPA.

Subject to exclusions not relevant here, the FDCPA defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

In *Heintz v. Jenkins*, the Supreme Court determined that attorneys may qualify as "debt collectors" under the FDCPA, holding that the Act applies to "attorneys who 'regularly' engage in consumer-debt collection activity, even when that activity consists of litigation."  514 U.S. 291, 292, 299 (1995).  *See also Johnson*, 305 F.3d at 1117 ("Attorneys engaged in the collection of debts are debt collectors subject to liability under the FDCPA.").  Thus, the FDCPA "applies to the litigating activities of lawyers," *Heintz*, 514 U.S. at 294, which, as other circuits have held, may include the service upon a debtor of a complaint to facilitate debt collection efforts, *see Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1031-32 (9th Cir. 2010), or statements in written discovery documents, *see Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 229, 231 (4th Cir. 2007).  But the *Heintz* Court did not analyze, nor have we, what constitutes "regularly" collecting debts or attempting to collect debts within the meaning of the FDCPA's definition of "debt collector" as it may apply to an attorney or law firm engaged in debt collection activity or litigation.  We do so here.

We begin by applying principles of statutory construction. In interpreting the FDCPA, our task is to determine Congress' intent, beginning with the plain language of the statute itself. *United States v. Handley*, 678 F.3d 1185, 1189 (10th Cir. 2012). If the language is clear, our inquiry ends. *Id*. If, however, the text is ambiguous, we inquire further to discern Congress' intent looking to the legislative history and underlying public policy of the statute. *Id*. "[W]e read the words of the statute in their context and with a view to their place in the overall statutory scheme." *Id*. (internal quotation marks omitted).

The FDCPA establishes two alternative predicates for "debt collector status": 1) engaging in debt collection as the "principal purpose" of the entity's business; or 2) engaging in debt collection "regularly." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 61 (2d Cir. 2004); 15 U.S.C. § 1692a(6). Our focus here is on the second prong of the FDCPA's definition of "debt collector" as one "who *regularly* collects or attempts to collect [a debt]," and, specifically, the term "regularly." 15 U.S.C. § 1692a(6) (emphasis added). The term "regularly" means "[a]t fixed and certain intervals, regular in point in time. In accordance with some consistent or periodical rule or practice." *Black's Law Dictionary* 1286 (6th Ed. 1990). In turn, the term "regular" means "steady or uniform in course, practice, or occurrence. . . [,] [u]sual, customary, normal or general." *Id*. at 1285. Reviewing § 1692a(6) as a whole, it is evident that Congress "intended the 'principal purpose' prong . . . to differ from the 'regularly' prong" of its definition of "debt

- 7 -

collector." *See Garrett v. Derbes*, 110 F.3d 317, 318 (5th Cir. 1997). As the Fifth Circuit has explained,

> a person may regularly render debt collection services, even if these services are not a principal purpose of [the] business. Indeed, if the volume of a person's debt collection services is great enough, it is irrelevant that these services only amount to a small fraction of [the] total business activity; the person still renders them 'regularly.'

*Id.* Yet, the plain meaning of the term "regularly" does not by itself differentiate the amount or frequency of debt collection that is a "regular" part of debt collection from an amount or frequency of debt collection that is a "principal purpose" of debt collection. And it is equally ambiguous regarding the amount of such debt collection by an attorney or law firm necessary to qualify as a "debt collector" under the FDCPA.

Turning then to the legislative history, as initially enacted, the FDCPA exempted "any attorney-at-law collecting a debt . . . on behalf of and in the name of a client" from the statutory definition of debt collector. *See* Fair Debt Collection Practices Act of 1977, Pub. L. No. 95-109, § 803(6)(F), 91 Stat. 874, 875 (1977). This was because "attorneys were only incidentally involved in debt collection activities." H.R. Rep. No. 99-405, *reprinted in* 1986 U.S.C.C.A.N. 1752, 1759. In 1986, however, in response to the large increase in the number of attorneys conducting debt collection, Congress repealed the attorney exemption. *See* Pub. L. No. 99-361, 100 Stat. 768 (1986); *see also* H.R. Rep. No. 99-405, at 1752. The legislative history reveals that Congress intended that the FDCPA apply to "any

attorney who is *in the business* of collecting debts."  H.R. Rep. No. 99-405, at 1753

(emphasis added).  However, it offers little guidance on what constitutes the

"regular" collection of debts by an attorney or law firm.  But this much seems clear:

such debt collection cannot be isolated or incidental but must, to varying degrees, be

a significant aspect of the attorney's business.

Other circuits to have addressed the issue of whether an attorney or law firm

"regularly" engages in debt collection such as to qualify as a "debt collector" within

the meaning of § 1692a(6) have not established a bright line test to resolve the

inquiry.  *See Scott v. Jones*, 964 F.2d 314, 316 (4th Cir. 1992); *Schroyer v. Frankel*,

197 F.3d 1170, 1176 (6th Cir. 1999); *Stojanovski v. Strobl & Manoogian, P.C.*,

783 F.Supp. 319, 322 (E.D. Mich. 1992).  Rather, as the Second Circuit explained,

this is a determination that "must be assessed on a case-by-case basis in light of

factors bearing on the issue of regularity."  *Goldstein*, 374 F.3d at 62.  To this end,

the *Goldstein* court identified the following factors and considerations as relevant to

a regularity inquiry:

> (1) the absolute number of debt collection communications
> issued, and/or collection-related litigation matters pursued,
> over the relevant period(s), (2) the frequency of such
> communications and/or litigation activity, including
> whether any patterns of such activity are discernible,
> (3) whether the entity has personnel specifically assigned
> to work on debt collection activity, (4) whether the entity
> has systems or contractors in place to facilitate such
> activity, and (5) whether the activity is undertaken in
> connection with ongoing client relationships with entities
> that have retained the lawyer or firm to assist in the
> collection of outstanding consumer debt obligations.

Facts relating to the role debt collection work plays in the practice as a whole should also be considered to the extent they bear on the question of regularity of debt collection activity (debt collection constituting 1% of the overall work or revenues of a very large entity may, for instance, suggest regularity, whereas such work constituting 1% of an individual lawyer's practice might not). Whether the law practice seeks debt collection business by marketing itself as having debt collection expertise may also be an indicator of the regularity of collection as a part of the practice.

*Id*. at 62-63.

We agree with and adopt the standard set forth by the Second Circuit in *Goldstein*. Although not an exhaustive list, we hold that courts must consider these factors in determining whether an attorney or law firm "regularly" engages in debt collection such as to qualify as a "debt collector" within the meaning of the FDCPA.

## B. Wadas's Status as a "Debt Collector"

With this analytical framework in mind, we now review the district court's entry of summary judgment on the basis that Wadas is not a "debt collector." The parties do not dispute, and James does not appeal, the district court's finding that debt collection is not a "principal purpose" of Wadas's business. Accordingly, only the district court's finding regarding the regularity prong is at issue.

In making its determination, the district court adopted the analytical framework of *Hightower-Henne v. Gelman*, No. 11-cv-01114-KMT-BNB, 2012 WL 95208 (D. Colo. Jan. 12, 2012), an unpublished district court opinion that, in turn, relied on the factors identified in *Goldstein*. For example, the district court

- 10 -

considered Wadas's affidavit filed in support of her motion for summary judgment in which Wadas averred the following: 1) she has never sent out a demand letter on behalf of a debt collector; 2) she does not have any paralegals or employees hired for the purpose of debt collection; and 3) she has no special programs, software, or other devices to assist with debt collection activities. Additionally, the district court considered Wadas's responses to interrogatories wherein Wadas averred the following: 1) throughout her legal career, Shadakofsky has been her only debt-collector client; 2) in 2011, income generated as a result of representing Shadakofsky was $1700; and 3) in the past ten years, of a total of 1789 cases, only between six and eight were debt collection cases which represented less than one percent of her total practice. Wadas also represented that since 1996 she has been involved in eleven other debt collection cases in which she represented the debtor, not the creditor. Based on the foregoing evidence, the district court determined that there were "no indicia" that debt collection was either a principal purpose of Wadas's law practice or that Wadas "regularly" engaged in debt collection. Aplt. App., Vol. 1, at 272. Nor were there any discernible patterns, either through debt collection or litigation, that would support a finding that Wadas engaged in debt collection regularly.

We agree with the district court's analysis. The record does not demonstrate that Wadas engages in debt collection with any sort of regularity; indeed, over the span of one decade Wadas engaged in only six to eight debt collection cases. Such

- 11 -

debt collection activity is minimal. Although the fact that Wadas has an ongoing relationship with Shadakofsky is a factor that would weigh in favor of "debt collector" status, again, the volume of cases accepted from this client comprises only a small portion of Wadas's overall caseload. Other factors also weigh against a finding that Wadas is a "debt collector." For instance, Wadas has not issued debt collection communications, and she does not have any system or personnel to assist with debt collection activity. Accordingly, we agree with the district court that Wadas does not qualify as a "debt collector" under the FDCPA.

On appeal, James challenges the district court's conclusion on the independent basis that the district court erroneously relied on Wadas's affidavit and responses to discovery interrogatories. *See* Aplt. Opening Br. at 8 (claiming that the affidavit is "completely devoid of any evidence substantiating [Wadas's] claims"). Summary judgment is appropriate, however, if the pleadings, depositions, *answers to interrogatories*, and admissions on file, together with the *affidavits*, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) (emphasis added). To the extent James claims that it was impermissible for the district court to rely on Wadas's affidavit or her response to interrogatories, James is mistaken.

And Wadas was not required to further substantiate her affidavit – evidence the district court was entitled to consider – with other evidence. As the moving party, it was Wadas's burden to come forward with prima facie evidence showing

that she does not regularly engage in debt collection. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment). She did so. "[O]nce [Wadas] carries this burden, [James] cannot rest upon his . . . pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he . . . carries the burden of proof." *Garrison*, 428 F.3d at 935. As the plaintiff in an FDCPA action, James bore the burden of proving Wadas's status as a "debt collector." *See Goldstein*, 374 F.3d at 60. Accordingly, James was required, in responding to Wadas's motion for summary judgment, "to make a showing sufficient to support a determination that [Wadas] was a debt collector at the time of the challenged communication." *Id.* at 60-61.

The record confirms, and the district court correctly concluded, that James presented little to no evidence contesting Wadas's claim that she is not a "debt collector." In opposition to Wadas's summary judgment motion, James argued that Wadas held herself out as a debt collector by participating in a lawyer referral service of the Wyoming State Bar. In support, he attached as evidence an exhibit identifying the areas of practice claimed by Wadas on the Wyoming State Bar website. He claimed below, and on appeal, that this factor supports a finding that Wadas is a "debt collector." Review of the exhibit demonstrates, however, that one of numerous areas of practice listed is "Collections – Debtor." Aplt. App., Vol. 1, at 247. The exhibit suggests that Wadas holds herself out as representing debtors, not creditors.

And James did not submit any other admissible evidence to support his claims. "Mere allegations unsupported by further evidence . . . are insufficient to survive a motion for summary judgment." *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005). Accordingly, the scant evidence James submitted in opposition to summary judgment is insufficient to create a genuine issue of material fact.

## III.    Conclusion

The judgment of the district court is affirmed.