FILED
United States Court of Appeals
Tenth Circuit

February 7, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

GARRY RANDALL WEST,

      Petitioner - Appellant,

v.

JASON BRYANT,

      Respondent - Appellee.

No. 18-6059
(D.C. No. 5:16-CV-00931-C)
(W.D. Okla.)

**ORDER DENYING
CERTIFICATE OF APPEALABILITY**[*]

Before **LUCERO**, **HARTZ**, and **McHUGH**, Circuit Judges.

      Petitioner Garry Randall West, an Oklahoma state prisoner proceeding pro se,[1]

seeks a certificate of appealability ("COA") to challenge the district court's dismissal

of his habeas petition brought under 28 U.S.C. § 2254. The district court dismissed

Mr. West's petition on the merits and declined to grant him a COA. We deny

Mr. West's COA request and dismiss the appeal.

---

[*]This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[1] Because Mr. West is proceeding pro se, "we liberally construe his filings, but we will not act as his advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

# I.     BACKGROUND

## A.     *Factual History*

In late 2011, a Stillwater, Oklahoma, police investigator searched an online filesharing site looking for internet protocol ("IP") addresses in the local area that might be involved in downloading child pornography. The investigator connected a video depicting sexually explicit conduct between a preadolescent male and an adult male with an IP address associated with Mr. West's residence in Perkins, Oklahoma.[2] Because Perkins was outside of the investigator's jurisdiction, the investigator passed along the information and assisted in writing a search warrant affidavit for Mr. West's residence. In January 2012, the investigator joined the Perkins police department to execute the search warrant at Mr. West's residence, where the police found several disassembled computers and one laptop that appeared operable. Finding evidence that an additional computer had been removed from the home, the officers decided to meet with Mr. West at his workplace.

Four police officers—two uniformed, two plainclothes—arrived at Mr. West's workplace in three marked police vehicles. The two plainclothes officers entered the building and the business's co-owner, Paula Fitch, directed them to Mr. West. The officers told Mr. West they were not going to arrest him at that time but were only gathering information and looking for another computer.

---

[2] While the investigator was unable to download the video directly from Mr. West's IP address, he was able to download the file from another user. The investigator then matched the downloaded video with an identical file Mr. West was sharing.

The officers then asked Mr. West for identification, which Mr. West said was in his truck in the parking lot. Mr. West and the two officers went to his truck, Mr. West handed them his identification, and the officers returned it after copying the information from his license. One of the officers then returned to the building and explained to Ms. Fitch that the police were looking for a computer belonging to Mr. West that may contain child pornography. Ms. Fitch told the officer Mr. West often brought a red laptop to the office. When the officer requested Ms. Fitch's consent to search the building, she expressed concern about the disruption a search would cause.

The officer exited the building and returned to Mr. West, reiterating that Mr. West was not under arrest but also stating that it was "time to be honest" and tell the officers where the red laptop was. Preliminary Hearing Tr. (July 31, 2012) at 22–23. Mr. West asked whether the officers had a search warrant; they admitted they did not. After thinking for a few minutes, Mr. West told the officers his red laptop was in the business's server room. At no point did the officers advise Mr. West of his *Miranda* rights.[3]

Mr. West alleged that during this questioning, he was enclosed in a circle of officers, his own vehicle, and patrol cars, making him feel like he could not leave. Ms. Fitch corroborated these factual circumstances.

The officer returned to Ms. Fitch and told her the red laptop was in the server room. She led the officer into the server room, where the officer saw a black bag with

---

[3] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Mr. West's red laptop sticking out.[4] The officer seized the red laptop and an external hard drive (which was also in the bag), along with Mr. West's smartphone from his office. The officer then told Mr. West he was free to leave.

The police subsequently obtained a warrant to search the contents of the red laptop and the external hard drive, and an investigator identified over three hundred images and videos of child pornography on the external hard drive. The police also found child pornography on a separate laptop seized from Mr. West's home as well as on various floppy disks and hard drives from his home.

## B. *Procedural History*

### 1. Mr. West's Trial and Sentencing

Oklahoma indicted Mr. West on one count of aggravated possession of child pornography ("Count One"), Okla. Stat. tit. 21, § 1040.12(A), and one count of unlawful access to a computer to violate Oklahoma statutes, Okla. Stat. tit. 21, § 1958 ("Count Two"). Mr. West moved to suppress the evidence from his red laptop and the external hard drive as fruits of a warrantless search, arguing his statement about the location of the red laptop should be suppressed along with all evidence obtained from the red laptop and external hard drive. Mr. West also argued that prosecution under both counts of the indictment constituted double jeopardy. The trial court denied his motions.

---

[4] Although worried about the potential disruption of her business if the police searched the entire building, Ms. Fitch testified she "wasn't forced to do anything." Preliminary Hearing Tr. (July 31, 2012) at 80.

4

After the preliminary hearing, Mr. West renewed his suppression motion, which the district court again denied. Mr. West proceeded to a bench trial on July 29, 2013. The court found Mr. West guilty on both counts and imposed concurrent sentences of twenty-three years' imprisonment for Count One and five years' imprisonment for Count Two.

## 2. Mr. West's Direct Appeal

Mr. West appealed to the Oklahoma Court of Criminal Appeals ("OCCA"), again arguing for suppression of the evidence from his red laptop and hard drive. In addition, he argued the two convictions violated state law prohibitions on double punishment and the conviction was not for a crime that required him to serve eighty-five percent of his sentence ("eighty-five percent crime").[5] The OCCA affirmed Mr. West's convictions in an unpublished opinion.

## 3. Mr. West's State Post-Conviction Proceedings

Mr. West then filed an application for post-conviction relief in the state trial court, raising thirteen propositions of error.[6] The trial court denied relief, rejecting his ineffective assistance of counsel claims on the merits because Mr. West failed to show

---

[5] Under Oklahoma law, a defendant convicted of certain designated crimes must serve at least eighty-five percent of the imposed sentence before he can be eligible for parole or a sentence reduction based on earned credits. Okla. Stat. tit. 21, § 13.1.

[6] These claims can be summarized as ineffective assistance of trial and appellate counsel, a defective search warrant, lack of justification for a warrantless search, violation of state prohibitions on double punishment, *Miranda* violations, fabrication of evidence, the need for a defense expert, and that his convictions were not eighty-five percent crimes.

prejudice, and dismissing his other claims as procedurally barred. Mr. West appealed the denial of his post-conviction application, but the OCCA affirmed.

**4. Mr. West's § 2254 proceedings**

Next, Mr. West filed a motion under § 2254 for habeas relief in the Western District of Oklahoma, raising eight separate claims.[7] A magistrate judge recommended denying Mr. West's petition. *West v. Bryant*, No. CIV-16-931-C, 2018 WL 1442976 (W.D. Okla. Feb. 28, 2018), *report and recommendation adopted*, No. CIV-16-931-C, 2018 WL 1440984 (W.D. Okla. Mar. 22, 2018). The magistrate judge determined "the majority of [Mr. West]'s federal claims were either unexhausted and/or procedurally barred." *Id.* at *3. However, "in the interest of efficiency," the magistrate judge addressed each of the claims on the merits. *Id.* The district court adopted the report and recommendation in its entirety over Mr. West's objection and denied Mr. West § 2254 relief. *West*, 2018 WL 1440984, at *1. But the district court did not address whether to grant Mr. West a COA. *Id.* Mr. West timely appealed and, after a limited remand, the district court also denied Mr. West's request for a COA. On May 11, 2018, Mr. West filed an application for a COA with this court.

---

[7] Mr. West's claimed grounds for relief were (1) ineffective assistance of appellate counsel; (2) ineffective assistance of trial counsel; (3) the evidence seized at his workplace should have been suppressed as fruit of the poisonous tree; (4) the search warrant in the original record had no relation to his residence; (5) a *Miranda* violation; (6) a due process challenge to his conviction's classification as an eighty-five percent crime; (7) he was improperly convicted under the aggravated possession of child pornography statute as it existed at the time of sentencing rather than at the time of the alleged conduct; and (8) his convictions violated the Double Jeopardy Clause of the Fifth Amendment.

## II.     ANALYSIS

The Antiterrorism and Effective Death Penalty Act ("AEDPA") conditions a state prisoner's right to appeal a denial of habeas relief on the grant of a COA, which is unavailable unless the applicant demonstrates a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)(A), (c)(2). Where, as here, a district court has rejected the constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. West does not make the required showing, so we deny his request.

We address Mr. West's arguments below in the same order as the district court: (1) Fourth Amendment challenge to the search and seizure; (2) *Miranda* claim; (3) applicability of the eighty-five percent rule; (4) challenge to the definition of child pornography; (5) double jeopardy claim; and (6) ineffective assistance of counsel.[8] In reviewing these claims, we provide additional factual and procedural background as necessary to perform the AEDPA analysis.

### A.     *Grounds III and IV—Challenges to the Search and Seizure*

In Ground III, Mr. West argues the red laptop and hard drive, seized during a warrantless search of his workplace, should have been suppressed as fruits of an unconstitutional search. He also argues, in Ground IV, that the search warrant

---

[8] In addition to his application for a COA and accompanying brief, Mr. West filed a second motion for a COA and a second opening brief. We construe his second motion as a motion to supplement his initial application for a COA. We GRANT the motion to supplement and consider both briefs together.

included in the original record was fatally defective because it listed an incorrect address, date, and items to be seized. Mr. West raised these claims in his application for post-conviction relief in the state court. *See* ROA at 286–303. The state trial court concluded these issues were procedurally barred and did not consider them on the merits. *Id.* at 42. But in the "interest of efficiency" the federal district court "avoid[ed] deciding [the] procedural bar questions [because the] claims can be readily dismissed on the merits." *West*, 2018 WL 1442976, at *3.

Under *Stone v. Powell*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494 (1976) (footnote omitted). This court has held that a state provides "full and fair litigation" when:

> trial counsel inform[s] the trial court of the factual basis for a Fourth Amendment claim, appellate counsel present[s] the issue to the state appellate court on direct appeal, and the state courts thoughtfully consider[] the facts underlying petitioner's Fourth Amendment claim but reject[] it on the merits by applying appropriate Supreme Court precedents.

*Matthews v. Workman*, 577 F.3d 1175, 1194 (10th Cir. 2009) (internal quotation marks omitted).

The district court concluded that Mr. West's Fourth Amendment challenges were fully and fairly litigated in the state courts. *West*, 2018 WL 1442976, at *4–5. Our review of the record confirms that conclusion. Mr. West's trial attorneys made

8

an oral motion to suppress during the preliminary hearings and followed up with a written motion. Later, Mr. West's trial attorneys renewed the motion, and the state trial court held a hearing on it. After the trial court denied the motion to suppress and Mr. West was convicted at a bench trial, appellate counsel raised the suppression claims to the OCCA. But the OCCA determined the trial court correctly denied the motions. And in his pro se post-conviction application, Mr. West again asserted his Fourth Amendment claims, which the state courts denied. Indeed, even Mr. West acknowledges that "[t]he method employed . . . in . . . seizing computer equipment and other items, all without a warrant or consent, was heavily litigated by written and oral Motions to Suppress" and included an "extended hearing on the Suppression Motion." Accordingly, challenges to the search and seizure were fully and fairly litigated during Mr. West's trial, direct appeal, and post-conviction application.

Mr. West argues, however, that he did not receive "full and fair litigation" in the state court proceedings because the OCCA never addressed his Fourth Amendment challenge to the warrantless search of his workplace, instead determining the search was consensual. But "[v]oluntary consent to search" is an exception to the Fourth Amendment prohibition on warrantless searches, *United States v. Jones*, 701 F.3d 1300, 1317 (10th Cir. 2012) (quotation marks omitted), and "[a] warrantless consent search is reasonable and thus consistent with the Fourth Amendment irrespective of the availability of a warrant," *Fernandez v. California*, 571 U.S. 292, 306 (2014). Accordingly, the state courts rejected Mr. West's Fourth Amendment claim on the merits "by applying appropriate Supreme Court

precedents." *Matthews*, 577 F.3d at 1194 (internal quotation marks omitted). As a result, the state courts were not required to address whether the officers had probable cause to procure a warrant for Mr. West's place of employment or whether exigent circumstances justified the warrantless search. The state courts reasonably concluded that Ms. Fitch's consent to the search of the server room is an exception to the Fourth Amendment warrant requirements.

Mr. West had a full and fair opportunity to litigate his claims. *See Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999) (affirming denial of habeas relief pursuant to *Stone* where petitioner moved to suppress evidence, objected at trial, and raised the issue to the OCCA on direct appeal).[9] Thus, reasonable jurists would not find the district court's determination that it was precluded from considering Mr. West's claims in Grounds III and IV under *Stone* debatable or wrong. *See Slack*, 529 U.S. at 484.

---

[9] Mr. West also argues that he could not have received "full and fair litigation" because the correct search warrant was not included in the original record on appeal. But the record indicates otherwise. It is true that the original record included a search warrant for an unrelated criminal investigation. But that error was corrected and Mr. West's attorneys had access to the correct search warrant, which was made part of the state court record in response to Mr. West's post-conviction application. *Compare* O.R. at 50 (Motion to Suppress Warrantless Search and Seizure of Defendant's Laptop Computer) ("The search warrant described a specific address of a single family residence in the city of Perkins, Oklahoma and specific items to be searched for and seized including computer equipment or any medium that would contain alleged images of child pornography."), *with* ROA at 478–81 (correct search warrant) (listing residence as an address in Perkins and the items to be seized as computers and computer hardware that may contain child pornography). Furthermore, the state trial court referred to the correct warrant in its denial of Mr. West's application for post-conviction relief.

## B.   *Ground V—Alleged* **Miranda** *Violation*

In Ground V, Mr. West alleges the police officers never read him his *Miranda* rights despite detaining and interrogating him outside his office. Mr. West raised this argument in his state post-conviction application, but the state trial court mistakenly determined the claim had been raised on direct appeal, and it therefore declined to consider it. *See West*, 2018 WL 1442976, at \*6. Because Oklahoma courts had not addressed the claim on the merits, the district court properly exercised independent review over the claim, *Hooks v. Ward*, 184 F.3d 1206, 1223 (10th Cir. 1999), presuming any relevant "determination of a factual issue made by a State court . . . to be correct" unless rebutted "by clear and convincing evidence," 28 U.S.C. § 2254(e)(1).

The district court determined Mr. West's statement that the red laptop was in the server room did not implicate his *Miranda* rights. *West*, 2018 WL 1442976, at \*7. "The *Miranda* rule protects against violations of the Self-Incrimination Clause, which . . . is not implicated by the introduction at trial of physical evidence resulting from voluntary statements." *United States v. Patane*, 542 U.S. 630, 634 (2004) (plurality opinion). "[P]hysical evidence obtained as fruit of a voluntary statement by a defendant to a law-enforcement officer is admissible at trial regardless of whether the officer gave the defendant *Miranda* warnings." *United States v. Phillips*, 468 F.3d 1264, 1265 (10th Cir. 2006).

"[T]he ultimate issue of voluntariness . . . is a question of law," *United States v. McNeal*, 862 F.3d 1057, 1061 (10th Cir. 2017), but the analysis involves "the totality of all the surrounding circumstances—both the characteristics of the accused and the details

11

of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Accepting,

as it must, the state court's findings of fact, the district court determined that Mr. West's

statements about the laptop's location were voluntary and uncoerced. The state court

found:

> From the evidence it appears to this Court that at the time the statements in question were made by [Mr. West] to the Stillwater Police Department detective that [Mr. West] was not deprived of his freedom of action to the degree associated with a formal arrest and that said statements were the product of free and deliberate choice of [Mr. West]. Said statements were given by [Mr. West] in a familiar or neutral location, i.e. the parking lot of [Mr. West]'s place of employment in view of other persons besides law enforcement officers; [Mr. West] at no time was placed in handcuffs or placed on the ground or any other compromising posture; the police followed or accompanied [Mr. West] from the building of his employer to the parking lot without obvious control or restraint by the police as opposed to being ordered by the police to accompany them; the police did not forcibly enter the premises of [Mr. West]'s place of employment; [Mr. West] was told by the police officer he was not under arrest and would not be arrested that day; [Mr. West] was not subjected to physical abuse or intimidation by the police; and [Mr. West] is 52 years old, and appears to possess at a minimum a reasonable level of intelligence.

O.R. at 96–97. Mr. West adduces some evidence to challenge the conclusion that his

statement was voluntary,[10] but this evidence falls outside the state trial court's factual

findings, and Mr. West has not shown by clear and convincing evidence that those

---

[10] Specifically, Mr. West points to Ms. Fitch's testimony that he was between two cars and there was an officer on either side of the exit. However, this evidence cannot overcome the presumption in favor of the state court's finding that he "was not deprived of his freedom of action to the degree associated with a formal arrest and that said statements were the product of free and deliberate choice." *See* O.R. 96–97; *see also Stansbury v. California*, 511 U.S. 318, 322 (1994) ("[A] court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there was a formal arrest or restraining on freedom of movement of the degree associated with a formal arrest." (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (quotation marks omitted)).

findings were incorrect. *See Grant v. Royal*, 886 F.3d 874, 889 (10th Cir. 2018) ("[A]ny state-court findings of fact that bear upon the claim are entitled to a presumption of correctness rebuttable only by clear and convincing evidence." (quotation marks omitted)). Thus, reasonable jurists would not find the district court's conclusion that Mr. West's statement to the police was voluntary, and therefore did not implicate *Miranda*, debatable or wrong.

### C.     *Ground VI—Challenge to the Eighty-Five Percent Rule*

Mr. West argues that aggravated child pornography was not an enumerated felony to which the eighty-five percent rule applied until 2015—several years after he committed the crime. Thus, he contends it is an ex post facto law that has increased his sentence by denying him earned time credits in violation of the Fifth and Fourteenth Amendments to the federal Constitution. Although Mr. West objected to the classification of his crime of conviction as an eighty-five percent crime in the state court, he did not couch the argument in federal constitutional terms. As a result, the OCCA ruled only on the state law question of whether the crime of conviction qualified as an eighty-five percent crime, holding that it did. Thus, the district court was free to independently consider Mr. West's federal constitutional claim. *Littlejohn v. Trammel*, 704 F.3d 817, 825 (10th Cir. 2013). And we can grant a COA on that claim only if the district court's decision is fairly debatable. *Slack*, 529 U.S. at 484.

Oklahoma law provides a person convicted of a felony enumerated in Oklahoma Statute title 21, § 13.1 "shall not be eligible for parole consideration prior to serving eighty-five percent (85%) of the sentence imposed." Okla. Stat. tit. 21,

13

§ 12.1. The statute also prevents inmates convicted of the enumerated offenses from being "eligible for earned credits or any other type of credits which have the effect of reducing the length of the sentence to less than eighty-five percent (85%) of the sentence imposed." *Id.* Mr. West argues that aggravated child pornography was not an enumerated felony to which the eighty-five percent rule applied until 2015—several years after he committed the crime.

Mr. West argued in the district court that because aggravated child pornography was not enumerated in the statute when he was convicted, it is an ex post facto law that has unconstitutionally increased his sentence by denying him earned time credits. The district court rejected his argument, reasoning that "application of the 85% Rule . . . does not extend the duration of incarceration beyond the term of years initially imposed[.] [I]t merely postpones the date on which an inmate is initially eligible to be considered for parole." *West*, 2018 WL 1442976, at *7. Reasoning that Mr. West "lacks any federal due process rights in the parole process," the district court concluded he also lacked a liberty interest protected by the federal Due Process Clause. *Id.* As we now explain, the district court's decision is not fairly debatable.

To establish a due process violation, Mr. West "must first demonstrate that he has been deprived of a constitutionally-protected liberty or property interest." *Boutwell v. Keating*, 399 F.3d 1203, 1211 (10th Cir. 2005). As a general matter, there is no federal constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of

14

a convicted person to be conditionally released before the expiration of a valid sentence."). Moreover, this court has repeatedly held that where a state's "parole scheme is discretionary, [a prisoner] has no constitutionally protected due process liberty interest in parole." *Griffith v. Bryant*, 625 F. App'x 914, 917 (10th Cir. 2015) (unpublished); *see Boutwell*, 399 F.3d at 1213–15; *Shirley v. Chestnut*, 603 F.2d 805, 807 (10th Cir. 1979). Because the eighty-five percent rule does not implicate a constitutionally protected interest, Mr. West cannot successfully allege a due process violation based on its application to his sentence. Therefore, the district court's rejection of Mr. West's due process challenge was neither debatable nor wrong.

### D.    *Ground VII—Challenge to the Definition of Child Pornography*

Mr. West next asserts an ex post facto challenge, observing that after he committed the crime but before his conviction, Oklahoma modified the definition of "child pornography" to provide that "[e]ach visual depiction or individual image shall constitute a separate item and multiple copies of the same identical material shall be counted as a separate item." Okla. Stat. tit. 21, § 1024.1(A) (eff. Nov. 1, 2012). Mr. West did not raise this claim on direct appeal or post-conviction in the state court, but the district court exercised its discretion to avoid the procedural bar issue and to instead dismiss the claim on the merits. *See Brown*, 515 F.3d at 1092–93. Mr. West does not elaborate on his argument beyond a mere assertion that the definition was misapplied, thereby somehow depriving the state court of jurisdiction to enter sentence. Construing his argument liberally, *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013), the district court interpreted Mr. West's argument as: prior to

15

inclusion of this definition, all the images on his single external hard drive would have been lumped together as one "material," and thus would not have constituted "aggravated" possession of child pornography under § 1040.12a. *West*, 2018 WL 1442976, at *8. The district court rejected this argument, reasoning that the same definition of child pornography "is used throughout multiple statutes," including the criminal statute operative at the time he committed the crime. *Id.*

Mr. West is correct that the specific language he highlights was added to § 1024.1(a) after he committed the crime of conviction. Nonetheless, his argument fails because the aggravated possession of child pornography statute already included similar language. *See* Okla. Stat. tit. 21 § 1040.12a (2011) (describing the offense as the "possess[ion of] one hundred (100) or more separate materials depicting child pornography" and defining "material" as "all digital and computerized images and depictions"). And that language had been interpreted consistent with the subsequent amendment. *See Hamilton v. State*, 387 P.3d 903, 906 (Okla. Crim. App. 2016) (rejecting appellant's claim that "multiple obscene images on a single computer hard drive should be considered a single item of contraband," because Oklahoma Statute title 21, § 1040.12a "punishes the possession of 100 or more 'separate materials'" and "[t]he Legislature clearly intended that each visual image of child pornography should constitute a separate 'material' for purposes of [Okla. Stat. tit. 21, § 1040.12a]."). Because the prevailing definition under Oklahoma's aggravated possession of child pornography statute at the time Mr. West committed the crime defined each image as a "separate material," the district court's rejection of Mr.

16

West's ex post facto challenge to Oklahoma's statutory definition of child pornography was neither debatable nor wrong.

### E. *Ground VIII—Alleged Double Jeopardy Clause Violation*

The state court convicted Mr. West of two felonies: (1) aggravated possession of child pornography and (2) unlawful use of a computer network to violate an Oklahoma statute, in this case the possession of child pornography. Mr. West contends both offenses punish the same action and so his convictions violate the Double Jeopardy Clause of the Fifth Amendment. *See Benton v. Maryland*, 395 U.S. 784, 787 (1969) (holding "the Double Jeopardy Clause of the Fifth Amendment is applicable to the States through the Fourteenth Amendment").

On direct appeal in state court, Mr. West raised only a state law claim, challenging the two convictions as double punishment in violation of Oklahoma law. Consequently, the OCCA ruled only on the state law issue. Mr. West raised his federal double jeopardy argument for the first time in state post-conviction proceedings, and the state courts rejected the argument as procedurally barred.[11]

The district court rejected Mr. West's constitutional claim, exercising its discretion to consider the issue on the merits. *See Slack,* 529 U.S. at 485 (holding that where the claim was dismissed on procedural grounds without reaching the merits, the

---

[11] Mr. West raised this argument in his state post-conviction petition as part of "Ground VIII" for relief. ROA at 28–29. The state trial court rejected this argument as procedurally barred, mistakenly concluding it was "addressed by the direct appeal and summary opinion and *res judicata* bars Petitioner from further relief." *Id.* at 42. The OCCA affirmed. *Id.* at 45–46.

court of appeals may dispose of it on the merits or procedural bar, depending on which "answer is more apparent from the record and arguments"). The district court evaluated the double jeopardy claim under *Blockburger v. United States*. *West*, 2018 WL 1442976, at *9. In *Blockburger*, the Supreme Court held "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. 299, 304 (1932). And since *Blockburger*, the Supreme Court has expressly rejected the argument that criminal prosecution for multiple felonies stemming from the same single act violates the Double Jeopardy Clause if the offenses have distinct elements. *United States v. Dixon*, 509 U.S. 688, 704 (1993).

Aggravated possession of child pornography requires the state to prove the defendant: (1) knowingly, (2) possessed, (3) one hundred or more separate images of (4) child pornography. Okla. Stat. tit. 21, § 1040.12a. In comparison, unlawful access to a computer to violate an Oklahoma statute requires the state to prove the defendant: (1) communicated with or retrieved data from, (2) a computer system or network, (3) for the purpose of using the access to violate an Oklahoma statute. Okla. Stat. tit. 21, § 1958.

As illustrated above, Mr. West's two offenses contain different elements. Where the convictions required proof of different facts, *Blockburger* dictates that no double jeopardy violation occurred. 284 U.S. at 304. Thus, the district court's

conclusion rejecting Mr. West's double jeopardy claim was neither debatable nor wrong.

## F.     *Grounds I & II—Ineffective Assistance of Trial Counsel and Appellate Counsel*

Mr. West claims he received ineffective assistance of trial and appellate counsel. With respect to ineffective assistance of trial counsel, the state trial court concluded these claims "could or should have been raised on direct appeal and Petitioner has therefore waived consideration of those issues as grounds for relief through the Post-Conviction process." The OCCA affirmed that ruling. The federal district court agreed that "the majority of Petitioner's federal claims are either unexhausted and/or potentially procedurally barred," but it considered and rejected each of these claims on the merits. *West*, 2018 WL 1442976, at *3.

As to the claims of ineffective assistance of appellate counsel, the state trial court considered each ground asserted and rejected it on the merits. The OCCA affirmed, concluding, "Petitioner has not established that any of the alleged errors for which he claims his appellate counsel was ineffective would provide a reasonable probability that the result of his appeal would have been different."

Applying the framework of *Strickland v. Washington*, 466 U.S. 668 (1984), the district court found the OCCA had reasonably denied all of Mr. Strickland's ineffective assistance claims. *West*, 2018 WL 1442976, at *10. The first prong of *Strickland* mandates that the defendant "must show that counsel's performance was deficient"; the second prong requires the defendant to show "that the deficient performance prejudiced

19

the defense" by "depriv[ing] the defendant of a fair trial." 466 U.S. at 687. Counsel's performance is "deficient" if it is "outside the wide range of professionally competent assistance." *Id.* at 690. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* As we now explain, based on this standard, no reasonable jurist would find the district court's conclusion debatable or wrong. *See Slack*, 529 U.S. at 484.

## 1. Ineffective Assistance of Trial Counsel

### a. *Failure to adequately examine the original record*

In Ground II(1)(a), Mr. West argues that his trial counsel was ineffective because counsel did not adequately examine the original record for errors—in particular, the absence of the search warrant authorizing a search of Mr. West's residence. As the district court observed, however, trial counsel had access to the correct search warrant and referred to it in his submissions to the state trial court. *See West*, 2018 WL 1442976, at *10; O.R. at 50 (Motion to Suppress Warrantless Search and Seizure of Defendant's Laptop Computer); *see also supra* note 9. Although the original record did not include the correct search warrant, the warrant existed and was promptly provided by the State when notified of the error. Accordingly, no prejudice could have arisen from counsel's failure to identify this error in the original record sooner, and no reasonable jurist would find the district court's denial of this claim debatable or wrong.

### b. *Failure to adequately investigate surrounding circumstances*

In Ground II(1)(b), Mr. West asserts that trial counsel failed to adequately: (i) investigate other individuals who lived at Mr. West's residence and had access to his

20

computer equipment and internet; (ii) prepare for preliminary hearings; (iii) review the search warrant; (iv) ascertain whether Mr. West was given a *Miranda* warning; and (v) ascertain whether a search warrant was actually issued for Mr. West's residence. But Mr. West has not explained how any of the above alleged inadequacies have prejudiced him. Furthermore, as discussed above, the correct warrant was produced, and trial counsel did argue (albeit unsuccessfully) that Mr. West was not given a *Miranda* warning. Therefore, no reasonable jurist would dispute the district court's denial of this ineffective assistance of counsel claim

      c.     *Failure to secure an expert witness and sufficiently examine State's expert*

In Grounds II(1)(c) and (e), Mr. West argues that his trial attorneys provided ineffective assistance by not calling an expert witness to refute the State's expert witness and for not sufficiently examining the State's forensic expert regarding the methods used to search Mr. West's computer.

Mr. West argues that the State's expert witness testimony regarding how the child pornography was discovered and linked to Mr. West was "so technical that all attorneys and even the Trial Court itself were somewhat 'at sea.'" ROA at 10. Because of the expert's purportedly nebulous explanation, Mr. West asserts his counsel should have cross-examined the expert or, in the alternative, called an expert witness for the defense. But Mr. West does not explain how cross-examination of the State's expert would have affected the outcome of trial or what his own expert would have testified. *See Strickland*, 466 U.S. at 687 (requiring a showing "that [counsel's] deficient performance prejudiced the defense").

21

Absent any theory of how Mr. West was prejudiced, no reasonable jurist could dispute the district court's denial of this ineffective assistance of counsel claim. *See James*, 724 F.3d at 1315 (holding we will not act as the appellant's advocate).

d.      *Failure to properly communicate with Mr. West*

Mr. West claims in Ground II(1)(d) that his counsel did not properly communicate with him because they failed to: (i) request in-depth consultation with him to ascertain specific facts; (ii) relay that they were unknowledgeable about the technical facts in the case and were unable to adequately communicate with him regarding those technical facts; (iii) acknowledge correspondence sent from Mr. West in jail; (iv) discuss trial strategy with him; and, (v) prepare him to testify for hearings and trial.

Despite accusing his attorneys of these inadequacies, Mr. West again omits any argument as to how this prejudiced him at trial. Without any showing of prejudice, no reasonable jurist could dispute the district court's finding that the OCCA reasonably denied Mr. West's ineffective assistance claims based on failure of trial counsel to communicate.

e.      *Failure to argue that Mr. West was being charged under a statute inapplicable to the crimes he was charged with*

In Ground II(1)(f), Mr. West alleges his counsel failed to argue that his crime did not fit the statutory requirement of Oklahoma Statute title 21, § 1040.12a requiring possession of over 100 materials of child pornography. For the reasons explained above, Mr. West was properly charged and convicted under this statute. *See supra* Section II.C. Therefore, if Mr. West's counsel objected to the charges, his objection would have been

meritless. Counsel is not ineffective for failing to raise a meritless objection. *Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006).

Thus, the district court's conclusion that the Oklahoma courts reasonably denied Mr. West's ineffective assistance of trial counsel claims is not debatable or wrong.

## 2.    Ineffective Assistance of Appellate Counsel

Mr. West argues his appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim related to the claims discussed in Section II.F.1 and for failing to: (1) adequately challenge the warrantless search of Mr. West's workplace; (2) adequately argue the double jeopardy violations; (3) argue that Mr. West's statements should have been suppressed; and (4) argue on direct appeal that trial counsel was ineffective for failing to immediately appeal the trial court's suppression decision. As discussed, Mr. West has not shown any constitutional violations resulting from ineffective assistance of trial counsel. *See supra* Section II.F.1. Thus, Mr. West cannot show prejudice from his appellate counsel's failure to argue ineffective assistance of trial counsel. *See Smith v. Robbins*, 528 U.S. 259, 289 (2000) (holding that defendant "must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel"). We now consider the claims unique to appellate counsel.

Regarding Mr. West's first and second challenges, appellate counsel did make arguments based on the warrantless search and alleged double jeopardy. *See* ROA at 150–57. Mr. West does not explain how his counsel's performance fell short of the *Strickland* standard, but instead, only restates the facts that occurred on the date of the

23

seizure of his red laptop. We give deference to the OCCA's merits ruling affirming the trial court's denial of post-conviction relief, *see Smith v. Duckworth*, 824 F.3d 1233, 1242 n.6 (10th Cir. 2016) ("[B]ecause the OCCA considered the merits of [the underlying] claim in considering whether ineffective assistance excused his procedural default, we must apply AEDPA deference to the OCCA's evaluation of that [underlying] claim."), and Mr. West has not shown the OCCA unreasonably applied federal law in rejecting his post-conviction application. Thus, the district court's rejection of these arguments is not debatable or wrong.

Mr. West's next challenge is that appellate counsel should have argued for suppression of Mr. West's statements about the red laptop's location because Mr. West was under an interrogative atmosphere and received no *Miranda* warning. Mr. West cannot show prejudice from appellate counsel's failure to raise this argument because, as the district court concluded based on the OCCA's factual findings, Mr. West's statements were voluntary. *See supra* Section II.B. Moreover, regardless of whether he was entitled to a *Miranda* warning, the physical evidence police found based on Mr. West's statements did not merit suppression. *Id.*

Mr. West's last challenge is that appellate counsel performed ineffectively by not immediately appealing the trial court's suppression decision. Because Mr. West's *appellate counsel* had not yet been appointed at that stage of the proceedings, we construe his argument as faulting *trial counsel* for not immediately appealing. In any event, his argument fails because an "order overruling [a] motion to suppress . . . [is] not a final order in the case and hence not appealable." *Hughes v. State*, 172 P.2d 435, 438

(Okla. Crim. App. 1946); *see also Di Bella v. United States*, 369 U.S. 121, 131 (1962) ("Orders granting or denying suppression . . . are truly interlocutory, for the criminal trial is then fairly in train."). Because counsel could not have immediately appealed the adverse suppression decision, counsel could not have been ineffective for failing to do so, nor could appellate counsel be ineffective for failing to argue trial counsel should have done so. *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) ("[I]f the issue is meritless, its omission will not constitute deficient performance.").

In sum, Mr. West has failed to plausibly allege that his counsels' performance was deficient or prejudicial at either the trial or appellate stage. Accordingly, the district court's conclusion that the OCCA reasonably found no ineffective assistance of counsel is neither debatable nor wrong.

### III.    CONCLUSION

Mr. West has not demonstrated that the district court's assessment of any of his constitutional claims is debatable or wrong. *See Slack*, 529 U.S. at 484. Therefore, we **DENY** his request for a COA and **DISMISS** this appeal.[12]

---

[12] Mr. West has also filed a motion requesting this court "declare the Oklahoma Aggravated Pornography Statute, Procedure, Conviction and Sentence . . . Unconstitutional" because it violates the First Amendment and the Double Jeopardy Clause of the Fifth Amendment and arguing he was denied his constitutional right to a trial by jury. Mr. West also filed a motion "to review and grant relief on . . . grounds for relief non-exhausted [*sic*]," "to declare exhaustion futile," and "to grant plain error review and relief." He is not entitled to a COA on these issues. At no point prior to these proceedings has Mr. West raised any of these arguments. As such, they are unexhausted in state court and furthermore we generally "do not address arguments presented for the first time on appeal." *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012). "A district court cannot be debatably wrong on issues that are not fairly presented to or

Entered for the Court


Carolyn B. McHugh
Circuit Judge

---

decided by it." *United States v. Clifton*, 728 F. App'x 880, 882 (10th Cir. 2018) (unpublished) (citation and quotation marks omitted). We therefore DENY these motions.

Mr. West has also filed a motion to submit transcript excerpts. Because Respondent Jason Bryant has filed the complete transcripts along with the original state court record, we DENY Mr. West's motion as moot.

Finally, Mr. West has filed a motion to proceed in forma pauperis. "An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C. § 1915(a)(3). Although the trial court so certified in this case, Mr. West "may nonetheless move this court for leave to proceed on appeal in forma pauperis pursuant to the mechanism set forth in" Federal Rule of Appellate Procedure 24(a)(5). *Rolland v. Primesource Staffing, L.L.C.*, 497 F.3d 1077, 1079 (10th Cir. 2007). As in the district court, "to succeed on his motion, an appellant must show a financial inability to pay the required filing fees and the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." *DeBardeleben v. Quinlan*, 937 F.2d 502, 505 (10th Cir. 1991). After careful consideration of Mr. West's application, we agree with the district court that he has not shown the existence of such a reasoned, nonfrivolous argument. His motion for leave to proceed in forma pauperis is accordingly DENIED.