FILED
United States Court of Appeals
Tenth Circuit

July 11, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BILLY JACK RUSSELL,

   Petitioner - Appellant,

v.

JASON BRYANT,

   Respondent - Appellee.

No. 18-7043
(D.C. No. 6:15-CV-00218-RAW-KEW)
(E.D. Oklahoma)

**ORDER DENYING
CERTIFICATE OF APPEALABILITY**[*]

Before **LUCERO**, **HARTZ**, and **McHUGH**, Circuit Judges.

  Mr. Billy Jack Russell, an Oklahoma state prisoner proceeding pro se,[1] seeks a certificate of appealability (COA) regarding his jury conviction of child abuse by injury. After being denied relief in the Oklahoma Court of Criminal Appeals (OCCA) on claims of sufficiency of the evidence and prosecutorial misconduct, Mr. Russell filed a petition under 28 U.S.C. § 2254 in the Eastern District of Oklahoma. The district court denied the petition and denied Mr. Russell a COA. Mr. Russell appealed.

---

  [*]This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

  [1] Because Mr. Russell is pro se, "we liberally construe his filings, but we will not act as his advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

We conclude the district court's determination on these claims is not fairly debatable by reasonable jurists, deny a COA, and dismiss this appeal.

## I.    BACKGROUND

A jury convicted Mr. Russell of child abuse by injury under Oklahoma law for abusing three-year-old J.F. Kelly Good, J.F.'s mother and the only eyewitness to testify at trial, had been living with Mr. Russell for about six months prior to the incident in question. Ms. Good testified that she and Mr. Russell took J.F. to get pizza on April 30, 2012. Upon returning home, Ms. Good sat J.F. on the toilet before bed and J.F. got sick and threw up on himself. Ms. Good went outside to throw up herself, and when she returned inside she heard Mr. Russell yelling and J.F. crying. Ms. Good testified that Mr. Russell was spanking J.F. with a paddle. Mr. Russell would take J.F. off the toilet, strike him with the paddle, and then sit him back on the toilet, repeating for about forty-five minutes. When this ended around midnight, Ms. Good took J.F. out of the home and left.

Ms. Good did not call 911 or take J.F. to the hospital because she was scared the authorities would take away her son. Instead, early the next morning she took J.F. to Chad Sinclair's and Brittany Fields's house where J.F. was given a bath and Tylenol. Mr. Russell came over and an argument about J.F. ensued. Mr. Russell left the premises with Mr. Sinclair and Ms. Fields, and Ms. Good took J.F. to her mother's house. Ms. Good never contacted the authorities, but her brother called the police later that day. Ultimately, J.F. was transported to a hospital where he was diagnosed with kidney failure due to severe blunt force trauma to his buttocks. On cross examination, Ms. Good

2

admitted she may have smoked methamphetamine that day and had recently been convicted of several crimes including permitting child abuse and neglect as a result of this incident.

The defense called Mr. Sinclair and Ms. Fields. They both testified they had never seen Mr. Russell get angry with J.F. during potty training but they had seen Ms. Good scream at and spank J.F. on previous occasions. On cross examination, Mr. Sinclair and Ms. Fields testified that they would "do anything to help" Mr. Russell. Mr. Sinclair further testified that when Mr. Russell arrived at his house Ms. Good never mentioned J.F. However, the prosecutor impeached Mr. Sinclair's testimony with his prior statement to the police, in which Mr. Sinclair indicated Ms. Good *had* talked to Mr. Russell about J.F. and that Ms. Good "said [Mr. Russell] did it." ROA at 268–69. Although Mr. Sinclair admitted to the inconsistent statement before the jury, a physical copy of Mr. Sinclair's police statement was not admitted in evidence. The prosecutor likewise attempted to impeach Ms. Fields's testimony, showing it to be inconsistent with the testimony of other witnesses. For example, Ms. Fields testified that Ms. Good made calls on her own cell phone, whereas Mr. Sinclair said Ms. Good used his phone.

In closing, the prosecutor stated, "Now you have heard from the Defense in their opening that they would provide evidence that the Defendant did not do this. They didn't provide that evidence." *Id.* at 271–72. He noted that only "one person testified today who was there . . . , [Ms.] Good." *Id.* at 272. The prosecutor continued, "You've heard from one person that saw it happen. One person. . . . It's abundantly clear what happened. It is abundantly clear who did it." *Id.* at 274. In its closing argument, the Defense responded

3

by attacking Ms. Good's credibility, stating her "number one concern" was buying drugs while her child suffered, and noting she made a deal with the state that ended its investigation of her. *Id.* at 275–77. The Defense also asserted that Mr. Sinclair and Ms. Fields had no reason to lie: "All the reasons they have to lie? What? They're not receiving some type of deferred sentence." *Id.* at 277. In rebuttal, the prosecutor pointed out inconsistencies in Ms. Fields's and Mr. Sinclair's testimony and stated, "Well, we saw them lie. I saw it. You saw it." *Id.* at 279. The jury returned a guilty verdict.

Mr. Russell filed a direct appeal to the OCCA alleging insufficient evidence and prosecutorial misconduct. The OCCA held that the evidence was "sufficient for any rational trier of fact to find the essential elements of the offense of child abuse by injury beyond a reasonable doubt." *Id.* at 80. As to prosecutorial misconduct, it held that the prosecutor's arguments fell within the permissible range allowed "when argument is based on competing inferences." *Id.* at 81.

Mr. Russell filed a petition for habeas review in the Eastern District of Oklahoma alleging, among others, claims of insufficient evidence and prosecutorial misconduct. His prosecutorial misconduct claim included four general allegations of misconduct: inappropriately shifting the burden of proof to Mr. Russell, vouching for a witness's credibility, calling the defense witnesses liars, and excluding potentially exculpatory evidence. The district court denied the sufficiency of the evidence claim, finding the jury was free to judge the credibility of each witness and the OCCA's determination that Mr. Russell's conviction was supported by sufficient evidence is not contrary to, or an unreasonable application of, federal law. Denying the claim of prosecutorial misconduct,

4

the federal district court held the OCCA's determination that the prosecution's statements in closing were not improper was not contrary to, or an unreasonable application of, established Supreme Court law because no alleged instance of misconduct could have infected the trial with such unfairness as to result in the denial of due process. The federal district court also denied Mr. Russell a COA.

Mr. Russell appealed to this court, again raising claims of insufficient evidence and prosecutorial misconduct. We deny a COA on all issues presented.

## II.   ANALYSIS

Because the district court denied a COA, we lack jurisdiction to consider the merits of Mr. Russell's appeal unless we issue a COA. *See* 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." *Okyere v. Rudek*, 732 F.3d 1148, 1149 (10th Cir. 2013) (quoting 28 U.S.C. § 2253(c)(2)). That standard requires "showing that reasonable jurists could debate whether (or, for that matter, agree that) the [§ 2254 petition] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* at 1149–50 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where, as here, the "district court has rejected the constitutional claims on the merits, the showing required . . . is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.

When determining whether to issue a COA, we must also consider the deference AEDPA requires us to give state court decisions. *See Davis v. McCollum,* 798 F.3d 1317, 1319 (10th Cir. 2015). If claims raised in a § 2254 petition were adjudicated on the merits in state court, "we may only grant relief if the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011) (internal citation omitted) (quoting 28 U.S.C. § 2254(d)(1), (d)(2)). For such claims, "AEDPA imposes a highly deferential standard for evaluating state-court rulings—one that demands that state-court decisions be given the benefit of the doubt, and that prohibits us from substituting our own judgment for that of the state court." *Ellis v. Raemisch*, 872 F.3d 1064, 1083 (10th Cir. 2017) (quotation marks omitted). For a state prisoner to obtain habeas relief, he "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). If that standard seems "difficult to meet, that is because it was meant to be." *Id.* at 102.

Thus, the combined standard of review requires Mr. Russell to show that a reasonable jurist could debate that Mr. Russell's grounds for relief should not have been denied by the district court despite the extreme deference federal courts are required to give state court determinations. "We review the district court's legal analysis of the state

6

court decision de novo." *Littlejohn v. Trammell*, 704 F.3d 817, 825 (10th Cir. 2013) (internal quotation marks omitted).

Mr. Russell raises two claims on appeal: that the evidence was insufficient to support conviction and that prosecutorial misconduct deprived him of a fair trial and violated his right to due process. We address each in turn and conclude that Mr. Russell has not satisfied the combined COA-§ 2254 standard.

## A. *Sufficiency of the Evidence*

We review § 2254 sufficiency-of-the-evidence claims under a "twice-deferential standard." *Parker v. Matthews*, 567 U.S. 37, 43 (2012). First, a reviewing court will only set aside a jury verdict on grounds of insufficient evidence "if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). Second, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge" unless "the state court decision was 'objectively unreasonable.'" *Id*. (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)). The proper inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A reviewing court will "presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any . . . conflicts [in the record] in favor of the prosecution." *Id.* at 326.

To determine whether there was sufficient evidence presented at trial to sustain Mr. Russell's conviction, the standard must be applied "with explicit reference to the substantive elements of the criminal offense" as defined by Oklahoma law. *Id.* at 324

7

n.16. In Oklahoma, child abuse by injury requires a showing that the defendant: (1) willfully or maliciously engaged in; (2) injuring; (3) a child under the age of eighteen. Okla. Stat. tit. 21, § 843.5(A) (2014). The OCCA reviewed all the evidence before the jury and found that the evidence was "sufficient for any rational trier of fact to find the essential elements of the offense of child abuse by injury beyond a reasonable doubt." ROA at 207. The district court found the OCCA's determination that the evidence was sufficient did not constitute an unreasonable application of federal law because it was not an unreasonable application of the *Jackson* standard.

Mr. Russell argues that the prosecution's witness, Ms. Good, was "[m]entally ill, and draw[s] a check for it from SSI, was not taking her meds (and hadn't been for a few days) per her testimony, . . . is a meth addict . . . and [is] a violent convicted criminal." Russell Br. at 3. Accordingly, Mr. Russell argues Ms. Good's testimony should be afforded no weight. Further, Mr. Russell contends that the testimony of two other witnesses, Mr. Sinclair and Ms. Fields, calls Ms. Good's testimony into question.

We will not overturn the OCCA's determination unless it was an objectively unreasonable application of federal law. *See Williams*, 529 U.S. at 409. "Credibility determinations are the province of the jury and are virtually unreviewable on appeal." *United States v. Bass*, 661 F.3d 1299, 1307 (10th Cir. 2011) (internal quotation marks omitted). Here, the jury had two competing versions of the events before it: Ms. Good's eyewitness account and Mr. Sinclair's and Ms. Fields's testimonies, with the latter discussing the post-injury events and their incredulity that Mr. Russell would have abused J.F. Further, during the defense's cross-examination of Ms. Good, the jury learned

8

that she was a drug addict, that she had previously pleaded guilty to charges of domestic violence, and that she was mentally ill and had not been taking her medication regularly. It was within the jury's purview alone to assess the credibility of these witnesses, and it is not our place to second-guess the jury's assessment. *See Bass*, 661 F.3d at 1307. Ms. Good testified that she witnessed Mr. Russell spanking her three-year-old son with a paddle for about forty-five minutes, resulting in J.F.'s injuries, which included kidney failure. Based on that testimony, a rational jury could find that Mr. Russell willfully injured a child under the age of eighteen. Therefore, the district court's determination that the OCCA did not unreasonably apply federal law in determining the sufficiency of the evidence is not fairly debatable. We deny a COA on the sufficiency of the evidence claim.

## B. *Prosecutorial Misconduct*

Mr. Russell raises four claims of prosecutorial misconduct. Considering all of Mr. Russell's claims together, the OCCA determined that the prosecutor's arguments fell within the permissible range allowed "when argument is based on competing inferences of the case from opposing points of view, including the credibility of the witnesses, especially when the comments are in direct response to arguments by defense counsel." ROA at 81. Considering each instance of claimed misconduct separately, the district court concluded that the OCCA's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court law and denied a COA.

Prosecutorial misconduct amounts to a constitutional error when the prosecutor's conduct renders the "petitioner's trial 'so fundamentally unfair as to deny him due

9

process.'" *Littlejohn*, 704 F.3d at 837 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)). We ask two questions to determine whether a defendant's trial was fundamentally unfair based on a prosecutor's comments: (1) were the prosecutor's comments improper, and (2) if so, did the improper comments likely affected the jury's verdict? *United States v. Christy*, 916 F.3d 814, 824 (10th Cir. 2019).

The OCCA resolved Mr. Russell's prosecutorial misconduct claim on the first question, concluding that none of the comments were improper. The district court addressed each prosecutorial misconduct claim individually and held that "the OCCA's determination of [Mr. Russell's] claims of prosecutorial misconduct was not contrary to, or an unreasonable application of, clearly established Supreme Court law." ROA at 304. We likewise consider each claimed instance of misconduct in turn.

## 1. Improper Burden Shifting

In closing, the prosecution stated, "Now, you have heard from the Defense in their opening that they would provide evidence that the Defendant did not do this. They didn't provide that evidence." *Id.* at 271–72. Mr. Russell argues that this statement improperly shifted the burden of proof from the prosecution to Mr. Russell. The district court concluded that the OCCA's decision to uphold the prosecutor's statement as not improper was not an unreasonable application of federal law because the statement was "directed at [Mr. Russell's] failure to present evidence showing he did not cause J.F.'s injuries and was not an attempt to shift the burden." *See* ROA at 299. We concur with the district court.

The prosecution may "comment upon the failure of the defense to produce" evidence as long as that evidence "can be solicited other than from the mouth of the accused." *United States v. Gomez-Olivas*, 897 F.2d 500, 503 (10th Cir. 1990). Here, the defense did not need testimony from Mr. Russell to produce evidence that he did not cause J.F.'s injuries. Mr. Sinclair's and Ms. Fields's testimonies were offered for that specific purpose. The prosecution argued that there was no evidence not because Mr. Russell did not testify, but because Ms. Good was the only eyewitness of J.F.'s injuries and Mr. Sinclair's and Ms. Fields's testimonies had been impeached.

Because the defense presented evidence to support Mr. Russell's claim of innocence without requiring Mr. Russell to testify, the prosecution's comments on the defense's lack of evidence were not improper. Thus, the district court's determination that the OCCA did not unreasonably apply federal law in concluding the prosecutor's comments in this case were not improper is not fairly debatable.

### 2. Vouching for Ms. Good's Credibility

Mr. Russell also argues the prosecution's statements in closing constituted impermissible vouching for Ms. Good's credibility. The prosecution stated, "You've heard from one person that saw it happen. One person. . . . It is abundantly clear what happened. It is abundantly clear who did it." ROA at 274. "Argument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not

11

presented to the jury supports the witness' testimony." *United States v. Magallanez*, 408 F.3d 672, 680 (10th Cir. 2005) (quotation marks omitted).

The district court determined that nothing in the prosecutor's argument could be construed as the prosecutor's personal belief in Ms. Good's credibility. Rather, the argument was "an inference based upon the presented evidence," and thus, "there was no constitutional error." ROA at 300. We agree that the prosecutor's argument did not put his "personal belief in [Ms. Good's] credibility" at issue. Rather, the prosecutor argued a reasonable inference from the record, something prosecutors are free to do. *See United States v. Young*, 470 U.S. 1, 9 n.7 (1985). Ms. Good was the only eyewitness who testified at trial and all conflicting testimony had arguably been impeached. From this record, the prosecution could reasonably argue the inference that it was "clear what happened" and "who did it." Such arguments did not vouch for Ms. Good's credibility.

It is not fairly debatable that the OCCA's conclusion that the prosecutor's statement was not improper was not an unreasonable application of federal law.

## 3. Calling Defense Witnesses Liars

Mr. Russell further argues misconduct occurred when the prosecutor argued that Mr. Sinclair and Ms. Fields lied. In rebuttal closing, the prosecutor stated:

> You heard from one witness today that changed his story. Do you remember Chad Sinclair? [Ms. Good] didn't say anything to him about [Mr. Russell]. Then I showed him his own statement that he gave the police. Well, yeah, she did. And you heard Chad. You heard Brittany. Two times, I would do anything to help [Mr. Russell]. Well, we saw them lie. I saw it. You saw it.

12

ROA at 279. Mr. Russell's only argument on appeal is that this statement was improper because prosecutors are "not allowed to call witness[es] liars[.]"[2]

But, "it is not per se prosecutorial misconduct to refer to testimony as a lie." *United States v. Kravchuk*, 335 F.3d 1147, 1154 (10th Cir. 2003) (citing *United States v. Hernandez-Muniz*, 170 F.3d 1007, 1012 (10th Cir. 1999)). While we have cautioned prosecutors against characterizing a witness's testimony as a lie, we have rejected claims of prosecutorial misconduct where that characterization can be fairly perceived as commentary on the record evidence. *See United States v. Robinson*, 978 F.2d 1554, 1566–67 (10th Cir. 1992); *see also Bland v. Sirmons*, 459 F.3d 999, 1024–25 (10th Cir. 2006). Further, "prosecutor[s] [are] allowed considerable latitude in responding to defense arguments, commenting on the evidence, and arguing inferences therefrom." *Gomez-Olivas*, 897 F.2d at 503.

Here, the prosecution was responding to the defense's arguments that Mr. Sinclair and Ms. Fields did not, and had no reason to, lie and that Ms. Good changed her story. The prosecution countered by arguing that it was actually Mr. Sinclair who changed his story and that the record supports an inference that Mr. Sinclair and Ms. Fields were the

---

[2] Although Mr. Russell contended in his reply brief before the district court that the prosecutor's statements are "clearly a personal opinion," ROA at 284, the district court did not address this issue nor does Mr. Russell make the personal-opinion argument on appeal. Rather, on appeal, Mr. Russell argues only that prosecutors are "not allowed to call witness[es] liars." Russell Br. at 4A–4B. And while we construe pro se filings liberally, *James*, 724 F.3d at 1315, "[t]his court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quotation marks omitted). This Court "cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.*

13

ones who lied. The prosecution referred the jury to the record evidence: Mr. Sinclair claimed that Ms. Good had not mentioned J.F. to Mr. Russell when Mr. Russell arrived at Mr. Sinclair's house, but Mr. Sinclair admitted his testimony was incorrect when confronted with the conflicting police report. The prosecution then noted that Ms. Fields and Mr. Sinclair both testified they "would do anything to help" Mr. Russell. *See* ROA at 279; *see also* Sealed ROA at 265 (Ms. Fields's testimony); *id.* at 281 (Mr. Sinclair's testimony). From that evidence, the prosecution inferred and argued that the jury "saw them lie." ROA at 279.

Under Supreme Court precedent, prosecutors are free to argue "all reasonable inferences from the evidence in the record." *Young*, 470 U.S. at 9 n.7. And we have held that it is "permissible for the prosecution to comment on the veracity of a [witness's] story," even to the point of "refer[ring] to the [witness] as a liar[,] on account of irreconcilable discrepancies between the [witness's] testimony and other evidence in the case." *Bland*, 459 F.3d at 1025 (citing *Hernandez-Muniz*, 170 F.3d at 1012; *United States v. Nichols*, 21 F.3d 1016, 1019 (10th Cir.1994)). Such a discrepancy was present here and was compounded by Mr. Sinclair's professed bias toward Mr. Russell. On this record, we cannot conclude that the OCCA unreasonably applied federal law as defined by the Supreme Court when it held that the prosecutor's reference to Mr. Sinclair's testimony as a lie was not misconduct.

## 4. Excluding Potentially Exculpatory Evidence

Finally, Mr. Russell argues that the prosecution improperly excluded from evidence Mr. Sinclair's statement to the police, implying in a heading that the statement

14

included exculpatory evidence. But his argument that the police statement is exculpatory is based solely on the jury's request to see the statement during deliberations. Mr. Russell is correct that the prosecution failed to enter Mr. Sinclair's police statement in evidence. But under Oklahoma law, the prosecutor was not required to do so. Where, as here, a "witness admitted the prior inconsistent statement," it is "not necessary to introduce [extrinsic evidence of] the inconsistent statement." *Kelsey v. State*, 569 P.2d 1028, 1031 (Okla. Crim. App. 1977).

Mr. Russell has not explained, as he must, how the prosecution's failure to enter the police statement into evidence was improper under clearly established federal law. *See* 28 U.S.C. § 2254(d)(1) (requiring petitioners to show that the state court's determination on the merits was contrary to or an unreasonable application of clearly established federal law as interpreted by the Supreme Court). Thus, the district court's determination that the OCCA did not unreasonably apply federal law is not fairly debatable.

## III.  CONCLUSION

For the reasons stated, we DENY Mr. Russell's COA application and DISMISS

this appeal.[3]

Entered for the Court


Carolyn B. McHugh
Circuit Judge

---

[3] Mr. Russell also requests a COA on a "Third Issue." He argues that the state court lacked jurisdiction over him because J.F. is Native American. We deny a COA on this issue because it was not raised before, or decided by, the district court. *See United States v. Viera*, 674 F.3d 1214, 1220 (10th Cir. 2012).